BANK OF BLYTHEVILLE *v.* STATE.

Opinion delivered May 9, 1921.

1. BANKS AND BANKING — LIABILITY OF STOCKHOLDERS FOR PUBLIC FUNDS.—Crawford & Moses' Digest, §§ 2832, 2835, making stockholders of banks liable for public funds deposited therein, does not violate Const., art. 12, § 6, providing that the General Assembly may alter or revoke charters in such manner that no injustice may be done the corporators, or Const. U. S., art. 1, § 10, prohibiting acts impairing the obligation of contracts.

2. CONSTITUTIONAL LAW—POWER TO ALTER OR REVOKE CHARTERS.— Under Const., art. 12, § 6, reserving to the General Assembly the power to alter or revoke the charter of a corporation, in such manner that no injustice may be done to the corporators, before an act changing the charter of a corporation can be declared unconstitutional, it must appear that the effect of the act is confiscatory of the stock or property of the corporation.

3. BANKS AND BANKING—CHANGE IN CHARTER—ACCEPTANCE.—Where stockholders of a bank accepted their original charter, subject to the State's reserved power to alter or revoke it, it was not necessary that they should formally accept the act imposing liability on stockholders for public funds on deposit (Crawford & Moses' Dig., §§ 2832, 2835) since they impliedly accepted the act by continuing in business after its passage.

4. BANKS AND BANKING—REPEAL OF STATUTE.—Crawford & Moses' Digest, §§ 2832, 2835, making bank stockholders liable for public funds deposited therein, was not repealed by the banking act of 1913, which does not deal with that particular subject nor expressly repeal such sections.

5. STATUTES—REPEAL BY IMPLICATION.—Repeals by implication do not arise unless there is an irreconcilable repugnancy between the later and older statutes.

6. STATUTES—REPEAL BY IMPLICATION.—A general affirmative statute could only repeal by implication prior statutes of a general affirmative nature dealing with the same subject, and would not have the effect of replacing a prior act dealing with a particular subject.

7. BANKS AND BANKING—LIABILITY FOR PUBLIC FUNDS.—The liability of stockholders of a bank for public funds, imposed by Crawford & Moses' Digest, § 2832, was not defeated by failure of the county collector to deposit each specific fund in a separate account, as the statute imposes no such duty.

8. BANKS AND BANKING—WHAT ARE "PUBLIC FUNDS."—Crawford & Moses' Digest, § 2832, making bank stockholders liable for public funds deposited in their bank, does not apply to funds belonging to a drainage district; § 2835 defining "public funds" as "money, warrants or bonds or other paper having a money value, belonging to the State or to any county, city, incorporated town or school district therein."

9. BANKS AND BANKING — PUBLIC FUNDS.—Voluntary payments of money for school purposes to the county collector, and by him deposited in a bank, were public funds, for which the stockholders of the bank were liable, under Crawford & Moses' Digest, §§ 2832, 2835.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley,* Judge; reversed in part.

*Hughes & Hughes, E. P. Rosenberger* and *Little, Buck & Lasley,* for appellants.

1. The act of April 9, 1891, as amended by act March 17, 1903, had the effect of increasing the burdens of the stockholders in the Blytheville Bank, which did them an injustice contrary to art. 12, § 6, of our Constitution, and impairs existing obligations in violation of art. 1, § 10, Constitution of the United States. Sections 1990 and 1993 of Kirby's Digest, being C. & M. Digest, §§ 2832 and 2835, were repealed as to banks by act 113, Acts 1913. Where the Legislature takes up the whole subject and covers the entire matter of a former statute, the prior act is repealed. 73 Ark. 536; 70 *Id.* 27.

2. All of the funds going to make up the deposit sued for were not public funds within C. & M. Dig., § 2835. The amount belonging to road districts is not shown. The

burden of doing this was on appellee to prove all material facts alleged by him. 105 Ark. 697. Appellee alleged that the deposit was made up of public funds. This was denied. The allegation was material, and the burden was on appellee to show that the deposit was made up of public funds and within the purview of our statute which must be strictly construed. 59 Ark. 344; 70 *Id.* 481. A recovery could only be had for public funds deposited. C. & M. Digest, § 2835. Drainage district funds are not county funds. 102 Ark. 106; 116 *Id.* 356, nor State funds, nor a city, town or school district fund, and hence not a public fund at all, and the court erred in olding a drainage district fund was a public fund, and appellant was not liable.

3. Appellees were not entitled to recover because the statute is unconstitutional and void, the statute was repealed by the banking act of 1913, and appellees did not separate the funds going to make up the deposit sued for so as to fall within the definition of public funds as set out in C. & M. Digest, § 2835. It was also error to allow a recovery for the drainage district funds, $4,139.23, and the $2,000, the voluntary contribution of the property holders in Blytheville Special School District.

*Nelson & Keck,* for appellees.

1. The act is constitutional. Acts like this have often been upheld. Elliott on Private Corporations (3 ed.), § 559; Clarke on Corp. (Hornbook Series), § 227; 10 Cyc. §§ 676-7.

The Legislature has the right of alteration and revocation of charters of corportions, limited only by the inhibition that no injustice be done the corporators. 58 Ark. 407; 64 *Id.* 83; 87 *Id.* 587; 94 *Id.* 27; 136 *Id.* 128. The adjudicated cases in Arkansas have no application to the present case. 130 Ark. 135; 219 U. S. 121; 236 *Id.* 579; 165 *Id.* 1.

2. C. & M. Dig., § 2832, was not repealed by the banking act of 1913. If it was, it was by implication, as there is no direct repeal. 50 Ark. 132; 53 *Id.* 337; 53 *Id.*

418; 92 *Id.* 270; 116 Ark. 414-15; 120 *Id.* 589.   There is no repugnancy between the acts.   123 Ark. 76; 127 *Id.* 266. Repeals by implication are not favored, and the two statutes must irreconcilable and repugnant.   123 Ark. 187; 142 *Id.* 146.

Drainage and improvement districts are agencies of the government for public purposes, and their funds are public funds.   99 Ark. 336; 107 *Id.* 189; 134 *Id.* 115.

HUMPHREYS, J.   Appellees instituted suit against appellants in the circuit court of Mississippi County, Chickasawba District, to recover $41,293.15, alleged to be public moneys collected as taxes by D. H. Blackwood, the duly elected, qualified and acting collector of Mississippi County, and deposited by him in the Bank of Blytheville.   A recovery was sought under the act of April 9, 1891, page 230, as amended by the act of March 17, 1903, page 142.   The parts of the acts involved in this litigation are digested in Crawford & Moses' Digest as sections 2832 and 2835.

Appellants interposed the following defenses to the alleged cause of action:   First, that the acts made the basis of the suit are unconstitutional and void; second, that the acts made the basis of the suit were repealed by act No. 113 of the Acts of the General Assembly of the State of Arkansas for the year 1913, known as the General Banking Law of the State; third, that the collector did not make separate deposits of the alleged public funds in said bank; fourth, that the drainage funds to the amount of $4,139.23 and the voluntary payment of $2,000 for school purposes were not public funds as defined by section 2835 of Crawford & Moses' Digest.

The cause was submitted to the court, sitting as a jury, upon the pleadings and evidence, which resulted in a verdict and judgment against appellants in the sum of $41,293.15.

The facts necessary to a determination of the issues involved on this appeal are, in substance, as follows: The Bank of Blytheville, of which appellants were stock-

holders, was organized and the stock issued in the year 1900. It began business immediately and continued to do business as a banking corporation until the 11th day of March, 1920, at which time, on account of insolvency, it was taken over by the State Banking Department under act No. 113, Acts of the General Assembly, 1913. Prior to the time said bank was declared insolvent and taken over by the deputy State Bank Commissioner, D. H. Blackwood, the sheriff and ex-officio collector of Mississippi County, had deposited in said bank, to his credit as collector, $41,293.15. The funds deposited were collections for the Chickasawba District of Mississippi County. $4,139.23 of said amount was taxes collected for drainage districts 7, 9, 16 and 17; $2,000 of said amount was a voluntary tax paid to the collector for the Blytheville Special School District; the remainder of it was taxes collected for the State, county, schools, towns and cities. Immediately after the bank commissioner assumed control of the bank, D. H. Blackwood, the collector, made a demand for the entire amount deposited, which demand for payment was by the bank refused.

Appellant's first insistence for reversal is that the act of April 9, 1891, as amended by act of March 17, 1903, had the effect of increasing the burdens of the stockholders in the Blytheville bank, who are appellants herein, in relation to public funds, which did an injustice to them, contrary to the inhibition of article 12, section 6 of the Constitution of the State of Arkansas, and which had the effect of impairing existing obligations in violation of article 1, section 10, Constitution of the United States. It is true that, prior to the amendatory act of March 17, 1903, stockholders of a bank were not liable for public funds, and that the amendatory act made them liable for all public funds deposited therein, not paid to the person entitled to receive same on demand. The constitutionality of the act in question has been before the court frequently, and the court is committed to the doctrine that the State has reserved its power in the Constitution to alter the charter of a corporation, limited

only by the inhibition that "no injustice be done the corporators." *Leep* v. *Railway Co.,* 58 Ark. 407; *St. L., I. M. & S. Ry. Co.* v. *Paul,* 64 Ark. 83; *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587; *Arkansas Stave Co.* v. *State,* 94 Ark. 27; *Davis* v. *Moore,* 130 Ark. 128. The reservation of this power and the only limitation, imposed may be found in article 12, section 6, of the Constitution of 1874, which reads as follows: "Corporations may be formed under general laws, which laws may be from time to time altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of any incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever in their opinion it may be injurious to the citizens of this State, in such a manner, however, that no injustice may be done to the corporators." Every objection urged by appellants against the constitutionality of the acts finds an answer in the fact that a corporation accepts its charter powers subject to the reserved right in the State to alter or revoke the charter whenever, in the opinion of the General Assembly, such revocation or alteration is for the protection of the citizens of the State, if done in such a manner that no injustice may be done to the corporators. Before an act revoking or changing the charter of a corporation can be declared unconstitutional, it must appear that the effect of the act is confiscatory of the stock or property of the corporation. In discussing a statute which imposed additional liabilities upon stockholders and directly upon the question as to whether injustice had been done to the corporators by the passage of the statute, this court said, in *Davis* v. *Moore,* 130 Ark. 128: "The statute, as we have already seen, does not impose an absolute liability on the shareholder of stock, nor does it compel the corporation or its stockholders to accept the provisions of the statute. It does not operate in any sense as a confiscation of the shares of stock, for the corporation may be wound up, and in that way the property interest of the stockhold-

ers preserved, or an individual stockholder may sell his stock if he objects to the corporation continuing business under the new terms prescribed. It can not be assumed that the new terms prescribed by the statute operate as an impairment or depreciation of the value of the stock, and that an objecting stockholder would be unable to dispose of his shares of stock at full value.'' The appellants assail the statute before us on the further ground that no provision is contained in it for an acceptance of the change or alteration in the charter by the corporation or its stockholders. This can make no difference, because, as said before, it accepted its original charter on condition that the State reserved the power to revoke or alter it, if the revocation or alteration did not have the effect of confiscating its property. An acceptance of the altered charter was clearly made by continuation in business after the change was made. The statute in question is not void as infringing upon either the Constitution of the State or of the United States. *Noble State Bank* v. *Haskel,* 219 U. S. 104; *Assaria State Bank* v. *Dolly,* 219 U. S. 121; *Rampo Water Co.* v. *New York,* 236 U. S. 579. In the last case cited, the Supreme Court of the United States said: ''Where the charter of a corporation granted by the State Legislature, or the Constitution or the law of a State in force when such charter is granted, reserves to the Legislature the power to alter, amend or withdraw any franchise or privilege granted by such charter, this reservation qualifies the grant, and the subsequent exercise of the reserved power is not within the prohibition of the Federal Constitution as an act impairing the obligation of a contract.''

Appellants' second insistence for reversal, that sections 2832 and 2835 of Crawford & Moses' Digest were repealed by the banking act of 1913, is not sound. There is no express repeal of sections 2832 and 2835 of Crawford & Moses' Digest in the general banking act, and repeals by implication will not arise unless there is an irreconcilable repugnancy between the later and older

statutes. Sections 2832 and 2835 of Crawford & Moses' Digest make the stockholders of a bank liable for public funds deposited in the bank, if the bank fails to pay the funds to the person entitled to receive same upon demand. The banking act of 1913 does not deal with that particular subject. While the banking act is a general affirmative statute, it could only repeal prior statutes of a general affirmative nature dealing with the same subject, and would not have the effect of repealing a prior act dealing with the particular subject. *Martels* v. *Wyss,* 123 Ark. 184; *Ward* v. *Wilson,* 127 Ark. 266; *State* v. *Adams,* 142 Ark. 411; *Bartlett* v. *Willis,* 147 Ark. 374.

The third insistence of appellant for reversal, to the effect that appellants are not liable because the collector did not deposit each specific fund in separate accounts in the bank, is not well taken, because the statute in question does not impose any such duty upon the collector.

That part of the fourth or last insistence of appellant for reversal, to the effect that the court erred in permitting a recovery for the amount of the drainage funds of $4,139.23, is sound. The act upon which a recovery is sought specifically defines the public funds for which stockholders become liable when deposited in the bank, when not paid to the party entitled thereto upon demand. It is only money of the United States, State, county, city, town or school warrants or bonds or other paper having a money value which are the property of the State or of the county, city, incorporated town or school district, deposited in banks, which can be recovered from the stockholders of the bank in case not paid by the bank to the party entitled thereto upon demand. The language of section 2835 of Crawford & Moses' Digest is specific in defining public funds, and does not include public funds belonging to drainage districts. If the statute permitted the recovery of all public funds deposited in a bank from the stockholders when not paid by the bank upon demand of the party entitled thereto, then public funds belonging to a drainage district would necessarily be included, but the public funds defined in the act

are confined to those belonging to the State, county, city, incorporated town or school district.   The act is as follows:

"For the purpose of this act 'public funds' shall be construed to mean all lawful money of the United States, and all State, county, city, town or school warrants or bonds, or other paper having a money value, belonging to the State, or to any county, city, incorporated town or school district therein."

We can not agree, however, with the insistence of appellant that the voluntary payment of money to the collector in the sum of $2,000 for the Blytheville Special School District is not a public fund, as defined by section 2835 of Crawford & Moses' Digest.   It became a part of the school fund as completely by voluntary payment as if the payment had been involuntary.   It was property passing through the hands of the collector of a public nature, belonging to said school fund.   We think it comes clearly within public funds, defined by said statute.

The judgment is affirmed except as to the item of $4,139.23, and, as to that item, it is reversed and dismissed as against the stockholders.