[L. A. No. 14462. In Bank.—April 30, 1936.]

EDWARD RAINEY, Superintendent of Banks, etc., Respondent, v. HERMAN MICHEL, Appellant.

262

Ivan G. McDaniel and John Dales, Jr., for Appellant.

Holcomb, Holcomb & Kempley, Devlin & Devlin & Diepenbrock, Pillsbury, Madison & Sutro, Alfred Sutro, Eugene M. Prince, Francis N. Marshall, C. F. Metteer, Elliott, Atkinson & Sitton, Gibson, Dunn & Crutcher, E. E. Bacon, Henry B. Ely, White, Miller, Needham, Harber & Mering, Swing & Swing and Frank M. Gunter, as *Amici Curiae* on Behalf of Appellant.

Sullivan, Roche, Johnson & Barry and Sullivan, Roche & Johnson for Respondent.

Griffith & Thornburgh and Butcher & Haines, as *Amici Curiae* on Behalf of Respondent.

SHENK, J.—The defendant, Herman Michel, appeals from a judgment in favor of the plaintiff for $75,550, rendered in an action brought by the Superintendent of Banks in an attempt to enforce a stockholder's liability under the Bank Stockholders Liability Act. (Stats. 1931, p. 338.)

The Marine Bank of Santa Monica was organized under the banking laws of this state. Its shares of capital stock were of the par value of $100 each, with 1166 shares outstanding. The defendant owned 780½ of these shares on August 14, 1931.

The bank became insolvent and the plaintiff, in the exercise of his statutory powers as Superintendent of Banks, on De-

cember 18, 1931, took possession of the property, business and assets of the bank, and is now in possession thereof, for the purpose of liquidating its affairs. In the process of liquidation, and in order to satisfy the creditors of the bank, the plaintiff found it necessary to levy a par value assessment on the outstanding stock. This he did under date of January 2, 1932. Upon default in payment on the part of some of the stockholders this action was brought and went to trial as to the defendant Herman Michel, the sole answering defendant, resulting in the judgment from which this appeal is taken. Defendant's total liability was found to be $78,050, of which $2,500 had been paid, resulting in judgment for the sum of $75,550.

The allegations of the complaint disclose that all of the statutory requirements were followed with reference to the call, levy and collection of the assessment. These allegations are not denied. The answer is based solely on two affirmative defenses: (1) That the defendant became the owner of his stock prior to the passage of the Bank Stockholders Liability Act in 1931; (2) "that all debts of said Marine Bank of Santa Monica now owing or which were owing on January 2, 1932, were incurred prior to the passage" of said act, which became effective August 14, 1931. The allegations of the first affirmative defense were found by the court to be true. The finding as to the second defense was made in conformity with a stipulation of the parties as follows: That at the time the plaintiff took possession of the property and assets of the bank, the total amount of the debts of the bank was the sum of $925,055.42; that, of said sum, debts to the amount of $413,042.35 were incurred prior to August 14, 1931, and the remaining sum of $512,013.07 was incurred after that date.

The 1931 act, under which the Superintendent of Banks has proceeded, is entitled: "An Act to define the liability of stockholders in California State Banks and to provide for the enforcement and collection of that liability by the Superintendent of Banks of the State of California." Section 1 of that act provides: "The stockholders of every banking corporation organized under the laws of the State of California shall be held individually liable, equally and ratably, and not one for the other, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock

therein, and the par value thereof, in addition to the amount invested in such shares.''

In enacting the statute of 1931, the legislature assumed to act pursuant to section 1 of article XII of the Constitution, as amended November 4, 1930, which reads as follows: ''The legislature shall have power, by general laws and not otherwise, to provide for the formation, organization and regulation of corporations and to prescribe their powers, rights, duties and liabilities and the powers, rights, duties and liabilities of their officers and stockholders or members. All laws now in force in this state concerning corporations, and all laws that may be hereafter passed pursuant to this section, may be altered from time to time or repealed.'' The amendment further provided: ''For the purpose of removing existing limitations upon the power granted by section 1 of article twelve of the Constitution amended as herein proposed, sections 2, 3, 9, 11, 12 and 14 of article twelve of the Constitution are hereby repealed . . . '' (See Stats. 1929, p. 2239.)

The first attack made upon the judgment is that the statute of 1931, under which the Superintendent of Banks purported to act, is unconstitutional in that it was enacted in violation of the following sections: Section 1, article XII of the Constitution, above quoted, which empowers the legislature to provide ''by general laws and not otherwise'' for the liabilities of stockholders of corporations; section 11 of article I providing that ''all laws of a general nature shall have a uniform operation''; section 25 of article IV providing that the legislature shall not pass special laws in thirty-three specifically enumerated cases, the last of which is ''in all other cases where a general law can be made applicable''; section 13 of article I, providing that no person shall ''be deprived of his life, liberty or property without due process of law''; and section 21 of article I, providing that no citizen or class of citizens shall ''be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens''.

The questions thus raised resolve themselves in substance into the sole question of whether, under the constitutional provisions above noted, and particularly under the provisions of article XII, section 1, the legislature may select stockholders of a bank and impose upon them a liability not im-

posed on stockholders of other corporations. Stated another way, are bank stockholders a proper subject for a valid legislative classification, so far as the question of liability is concerned?

The defendant urges that since 1849 the general constitutional policy of this state has been to treat the stockholders of all corporations alike, so far as liability, based on stockholdings, is concerned. A brief history of stockholders' liability will be helpful in understanding the discussion that follows:

The liability of a stockholder for the debts of the corporation was unknown at common law. (*French* v. *Teschemaker*, 24 Cal. 518, 540.) Whether constitutional authority was necessary as a basis for legislative imposition of such liability need not here be decided, for such authority was imposed, but not self-executing, by sections 32 and 36 of article IV of the Constitution of 1849. In 1850 the liability was attempted to be imposed on all stockholders, but not with sufficient particularity. (Stats. 1850–53, p. 288; Act of 1850, sec. 32.) By section 16 of an act of 1853 (Stats. 1850–53, pp. 273, 277), it was provided: "Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company, contracted or incurred during the time that he was a stockholder. For recovery of which, joint or several actions may be instituted and prosecuted." This enactment was held to be in conformity with the provisions of the Constitution of 1849 in the case of *French* v. *Teschemaker, supra,* decided in 1864.

In 1872, section 322 of the Civil Code was enacted, based primarily upon prior statutes, but with additions, imposing stockholders' liability applicable to all stockholders of all corporations, and without distinction as to the nature and business of various corporations. This section was later amended, but always preserving its characteristic as a law applicable to all stockholders of all corporations until its repeal in 1931, unless its repeal was effected by the adoption of the constitutional amendment on November 4, 1930, a question which, for reasons later appearing, is not decided in this case.

The Constitution of 1879 continued the stockholders' liability. (Sec. 3, art. XII.) In *McGowan* v. *McDonald,* 111 Cal. 57, 67 [43 Pac. 418, 52 Am. St. Rep. 149], this court said: "But the provisions of the Constitution of 1849 ap-

plied to the stockholders of all corporations, without regard to the character of the business to be transacted, and the same is true of the Constitution of 1879.'' In that case, among other things, it was held that a statute of 1862 which attempted to exempt from liability the stockholders of savings banks organized under the act was unconstitutional as beyond the power of the legislature.

In 1917 an act was passed relating to the liquidating of banks by the Superintendent of Banks and empowering him to levy assessments against stockholders of banks in liquidation. (Stats. 1917, p. 581; amended Stats. 1925, p. 905.) By section 2 of this act it was provided that the Superintendent of Banks should have the right to assess the stockholders of a bank in liquidation for such an amount as he might determine to be necessary to pay the creditors of the bank in full, which was a liability in excess of that prescribed by the Constitution and general laws of the state. The validity of that statute was involved in the more recent case of *Wood* v. *Hamaguchi*, 207 Cal. 79 [277 Pac. 113, 63 A. L. R. 861], wherein it was held that under article XII, section 3, as it then read, it was beyond the power of the legislature to single out the stockholders of banking corporations for the imposition of liability to creditors in any way different from the stockholders of other corporations.

In 1908 it was considered necessary to amend section 3 of article XII, in order to exempt from the general liability imposed by article XII those stockholders in corporations organized to promote the San Francisco International Exposition then in contemplation. Again, in 1926, the same section was amended to provide that stockholders in corporations organized under the law of this state with the word ''Limited'' or the abbreviation ''Ltd.'' following the name of the corporation, should not be generally subject to stockholders' liability, but to liabilities which might thereafter be imposed by the legislature.

From this brief history of the subject it cannot be doubted that since 1849 the Constitution and the valid statutory enactments passed pursuant thereto, have dealt with stockholders' liability by treating all stockholders alike. It is also apparent that whenever the legislature, prior to 1931, has attempted either to prefer by exemption the stockholders of certain banking corporations, or to impose on such

stockholders a liability not imposed upon stockholders of corporations in general, such attempts have been held unconstitutional. However, a reading of *French* v. *Teschemaker*, *McGowan* v. *McDonald*, *Wood* v. *Hamaguchi*, and the other cases relied upon by the defendant on this point, clearly indicates that all they decided was that under both the Constitution of 1849 and the Constitution of 1879, until 1930, the legislature was prohibited from classifying any one group of stockholders differently from any other group, so far as liability was concerned. In other words, all that was decided in those cases was that the Constitution had placed all stockholders in one group, so far as liability was concerned, and that the legislature was therefore prohibited from classifying such stockholders for purposes of legislation. Although there is broad language to be found in both *French* v. *Teschemaker* and *Wood* v. *Hamaguchi* to the effect that the legislature is without power to classify bank stockholders differently from stockholders generally, such language was necessarily used with reference to the then provisions of our Constitution.

■ The repealing and amendatory provisions adopted in 1930, and above referred to, undoubtedly had the effect of removing the constitutional restraints formerly existing, and of placing in the hands of the legislature the entire subject of stockholders' liability. That is, the 1930 amendments freed the legislature from the former constitutional prohibitions respecting liability of stockholders and placed the subject matter of such legislation in the hands of the legislature, subject to the limitation that any legislative enactment dealing with that subject must be by "general laws and not otherwise."

■ We cannot agree with the defendant in his contention that the expression "by general laws and not otherwise," found in article XII, section 1, as amended in 1930, has a meaning broader in scope than the expression "all laws of a general nature shall have a uniform operation," found in article I, section 11, and the prohibition against special laws "in all other cases where a general law can be made applicable," found in article IV, section 25, subd. 33. The quoted provisions of all three sections have substantially the same meaning. ■ It appears to be the defendant's position that the expression "by general laws and not otherwise" in

article XII, section 1, must be interpreted to mean that any law dealing with the subject of stockholders' liability must apply generally to all stockholders of all corporations even though a valid basis for classification might otherwise exist. To give this effect to the expression "general laws" would be to give it a meaning directly contrary to that given by the courts in many cases to the same expression found in the other two sections quoted. ▮ When the expression "general laws" was used in the new constitutional provision, we must assume that it was intended to be used in accordance with prior adjudications, in great number, with reference to the meaning of that phrase as elsewhere employed in the Constitution. The expression "general laws," as interpreted, is always used in opposition to "special laws," and we must assume that this is the meaning of the expression in article XII, section 1.

▮ That the defendant's interpretation of the expression is incorrect is clearly demonstrated by a consideration of the effect his interpretation would have on the law applicable to corporations generally. The phrase "by general laws and not otherwise" in article XII, section 1, applies not only to the legislature's power to pass laws applicable to stockholders' liability, but also to the legislature's power "to provide for the formation, organization and regulation of corporations, and to prescribe their powers, rights, duties and liabilities." If the defendant is correct in his interpretation, then not only could the legislature not classify as to stockholders' liability, but also all corporations would have to be formed, organized and regulated by a law applicable alike to all corporations. From early days in this state the legislature has been authorized to classify corporations as to formation, organization and regulation. Part IV, titles 2 to 24 of the Civil Code, now provides for the formation and organization of a score or more of different types of corporations. It may hardly be contended that the constitutional amendment of 1930 operated as a repeal of all these provisions of the Code.

▮ In view of the many decisions on the subject, it seems unnecessary to point out the distinction between a general and special law, but due to the insistence of counsel for the defendant and of numerous supporting *amici curiae*

that the act here in question is a special law, it will serve to clarify the matter if brief reference is made to the controlling principles. It has been consistently held that an act of the legislature applicable to one class only, when that class is reasonably the subject of classification, is a general law, and is not in conflict with any of the provisions of the state Constitution prohibiting special legislation. This court in *In re Weisberg*, 215 Cal. 624, 629 [12 Pac. (2d) 446], stated the established rule as follows:

██ "A law is general and uniform and affords equal protection in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided that such class is founded upon some natural or intrinsic or constitutional distinction between the persons composing it and others not embraced in it."

The same general principle was applied by this court in *State Savings etc. Bank* v. *Anderson*, 165 Cal. 437, 438, 449 [132 Pac. 755, L. R. A. 1915E, 675]. That case involved the interpretation of certain provisions of the Bank Act of 1909, particularly those permitting the Superintendent of Banks to take possession of an insolvent bank's assets—provisions applicable only to those engaged in the banking business. In upholding the act as well within the power of the legislative branch and in negativing the contention that the act was a special law because applicable only to banks, this court stated:

"The act deals solely with a matter pertaining to the public welfare and within the police power of the state to regulate. These regulations have substantial relation to and are intended and reasonably designed to protect and safeguard the people of the state against insecure banking or the further continuance in business of such institutions of that character as have become unsafe. These regulations, while applying to the banking business alone, apply to all who are engaged in that business either as corporations or individuals; they are all within a class subject to control and regulation by the state; the regulations prescribed operate upon all without any discrimination and within the legal rules declared for determining their validity are violative of no constitutional guaranty which the plaintiff has invoked." (See, also, *People* v. *Central Pac. R. R. Co.*, 105 Cal. 576 [38 Pac. 905]; *In re Sutter-Butte By-Pass Assess. No. 6, etc.*,

191 Cal. 650 [218 Pac. 27]; *Martin* v. *Superior Court,* 194 Cal. 93 [227 Pac. 762]; *Matter of Application of Stoltenberg,* 21 Cal. App. 722 [132 Pac. 841]; *In re West,* 75 Cal. App. 591 [243 Pac. 55]; 5 Cal. Jur. 819, and cases therein referred to.)

It is obvious from a consideration of the above cases that if the classification of stockholders of banking corporations different from other corporate stockholders is based upon any reasonable grounds, the present act, applying only to bank stockholders, is a general law and is not violative of the constitutional provisions above referred to. Before directly passing to a consideration of the question as to whether there is any reasonable basis for such a classification, brief reference should be made to certain basic rules of construction.

It is elementary that the question as to whether any legal basis exists for a particular legislative classification is primarily one for legislative determination and the courts will not interfere unless such classification is manifestly unreasonable or arbitrary.

In *Martin* v. *Superior Court, supra,* p. 101, the applicable rules of construction are summarized as follows:

"The power to thus classify necessarily carries with it a wide discretion in the exercise thereof. The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act and the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason. (Citing cases.) It follows that in any given case if the existence of a state of facts of which the court may take judicial notice seems to have been made the basis of a particular piece of legislation and if it may be reasonably said that such facts afford good ground for the making of a particular classification the legislative enactment will be upheld although the reason therefor does not appear *prima facie* in the law itself." (See, also, *In re Cardinal,* 170 Cal. 519 [150 Pac. 348, L. R. A. 1915F, 850]; *In re Sutter-Butte By-Pass Assess.*

*No. 6, etc., supra; Wores* v. *Imperial Irr. Dist.,* 193 Cal. 609 [227 Pac. 181]; *In re Schmolke,* 199 Cal. 42, 43 [227 Pac. 181]; *In re West, supra; People* v. *Mullender,* 132 Cal. 217 [64 Pac. 299].)

It is also well established that the constitutionality of a legislative enactment will be presumed and any doubt respecting its constitutionality will be resolved in its favor. (5 Cal. Jur., pp. 612, 821, and cases therein cited.)

Under the foregoing conception of the term ''general law'', and bearing in mind the rules of construction above referred to, we have no hesitancy in holding that the Bank Stockholders Liability Act is a general and not a special law, and that the classification therein contained is within the legislative power. The act is applicable to all persons in the specified class, and that class is based upon a natural, intrinsic and constitutional distinction which carves out that class from others of a somewhat similar nature. This conclusion necessarily follows from the fact that banks are engaged in a type of business which everywhere has been recognized as subject to treatment different from that affecting other corporations. This difference in treatment is justified, not only as to the regulation of the actual business of banking corporations, but also as to the treatment of their corporate stockholders. Banks are engaged in a business affected with a public interest and are subject to regulation under the police power, which clearly warrants special classification. (*Bank of Italy* v. *Johnson,* 200 Cal. 1 [251 Pac. 784]; *State Savings etc. Bank* v. *Anderson, supra; Engel* v. *O'Malley,* 219 U. S. 128 [31 Sup. Ct. 190, 55 L. Ed. 128]; *Noble State Bank* v. *Haskell,* 219 U. S. 104 [31 Sup. Ct. 186, 55 L. Ed. 112, Ann. Cas. 1912A, 487, 32 L. R. A. (N. S.) 1062].) Just how far this special treatment should go, that is, whether it should extend to stockholders' liability as well as the regulation of the ordinary business of banks, is in the main a matter of legislative discretion. In *Murphy* v. *Pacific Bank,* 130 Cal. 542 [62 Pac. 1059], there was under consideration the constitutionality of a statute distinguishing between stockholders of a· bank who were depositors, and depositors generally. The court held the classification to be a reasonable one.

It is also significant that many states, and the federal government, have seen fit to impose on stockholders of banks

different and more onerous liabilities than those imposed on stockholders of other corporations. We have not been referred to any authority, nor has independent research discovered any, where such a classification has been held to be unreasonable in the absence of constitutional prohibition such as existed in this state prior to 1930. We agree with the reasoning of the Ohio Supreme Court in *Allen* v. *Scott,* 104 Ohio St. 436 [135 N. E. 683, 685], where the court was considering a constitutional provision of that state imposing a double liability on stockholders of banks. In pointing out the justification for such a provision, the court stated:

"Depositors in private banking corporations are seeking no profit from the corporation, and are therefore in a very different situation from those persons who contract upon a speculative basis with other corporations. Experience has demonstrated the necessity of throwing greater safeguards around the administration of private banking corporations, and this amendment is a salutary provision designed to cause the officials of private banking corporations to be conservative in their business ventures."

It would not be proper at this time to indicate whether the power to classify stockholders of state banks differently from other stockholders includes the power to classify the stockholders, so far as liability is concerned, of all the different types of corporations provided for in the Civil Code as to formation and powers. It is sufficient now to hold that the business of banking is so highly specialized and so connected with the public interest, that the same convincing arguments used in sustaining various statutes dealing with the regulation of banks differently from other corporations, found in the cases cited above, apply with convincing force to the statute here under consideration. Such a statute is aimed primarily at protecting the depositing public and to insure on the part of the banking corporation a careful administration of its public trust. Experience has demonstrated the necessity for such safeguards.

The next contention of the defendant is that the act is unconstitutional in that, by its terms, it makes certain of the determinations of the Superintendent of Banks, in levying the assessment, conclusive upon the stockholders. The pertinent language of the statute is as follows:

"Whenever the superintendent of banks shall hereafter take possession of the business and property of any bank doing business in this state, for the purpose of liquidating its affairs, as provided by law, he may at any time during the process of such liquidation, if necessary to pay the debts of such corporation, enforce the individual liability of the stockholders set forth in section 1. For the purpose of enforcing such liability, the superintendent of banks may call for a ratable assessment upon the stockholders of such bank without previous judicial ascertainment of the necessity for such action, and the action of the superintendent of banks in calling for such assessment shall be conclusive on the stockholders of the necessity for such assessment. . . .

"If any stockholder of said bank shall fail to pay said assessment in full upon the date specified in said order as the date upon which said assessment shall be due and payable, a right of action shall immediately accrue to the superintendent of banks to recover the amount of said assessment or the amount remaining unpaid thereon from the stockholder or stockholders failing to pay the assessment in full.

"The superintendent of banks shall have power to maintain an action or actions in this state, or in any other state or country to enforce and collect any sums or amounts due and payable and remaining unpaid upon any such assessments from any stockholder or stockholders failing to pay the same in full; and in any such action the superintendent of banks may join as defendants one or more stockholders; and in any such action the superintendent of banks shall have the right of attachment as in other actions upon unsecured debts; provided, however, that the superintendent of banks shall not be required to give bond on attachment or pay filing fees or other court costs. . . .

"If, after the payment of all liabilities against such bank, and the costs and expenses of liquidation, any surplus shall remain, the court in the liquidation proceedings shall determine and provide for any equities as between the respective stockholders, including proportions belonging to each stockholder and of any surplus of any of the assets remaining after payment of all liabilities and the costs and expenses of liquidation by reason of full or partial payment of any such assessment or assessments, and shall direct the payment

thereof by the superintendent of banks accordingly."
(Stats. 1931, pp. 338, 339.)

For various reasons, it is contended that these provisions
violate the due process of law clauses of both the federal
and state Constitutions. The contention is that the stock-
holder is thereby deprived of a court hearing and is thus
foreclosed of an opportunity to urge possible defenses against
the action of the Superintendent of Banks. We find nothing
in the section that deprives the stockholder of the right to
urge in court any legitimate defense that he may have when
he is sued for his assessment, and it is only by suit that he
may be compelled to pay. All that the section does is to
make the action of the Superintendent of Banks conclusive
"of the necessity for such assessment", a provision which the
practical exigencies of the case make necessary.

The general question of the validity of a statutory provi-
sion making the determination of an administrative officer
conclusive as to the necessity for making an assessment on
bank stockholders is not one of first impression. The provi-
sions of the act under consideration were closely patterned
after similar provisions of the National Bank Act. On the
question of due process the decisions of the federal courts are
convincing. In *Kennedy* v. *Gibson,* 75 U. S. (8 Wall.) 498,
505 [19 L. Ed. 476], the leading case interpreting the fed-
eral act, the United States Supreme Court stated:

"It is for the comptroller to decide when it is necessary
to institute proceedings against the stockholders to enforce
their personal liability, and whether the whole or a part, and
if only a part, how much, shall be collected. These ques-
tions are referred to his judgment and discretion, and his
determination is conclusive. The stockholders cannot con-
trovert it. It is not to be questioned in the litigation that
may ensue. He may make it at such time as he may deem
proper, and upon such data as shall be satisfactory to him.
This action on his part is indispensable, whenever the per-
sonal liability of the stockholders is sought to be enforced,
and must precede the institution of suit by the receiver. . . .

"It would be attended with injurious consequences to for-
bid action against the stockholders until the precise amount
necessary to be collected shall be formally ascertained. This
would greatly protract the final settlement, and might be
attended with large losses by insolvency and otherwise in the

intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered. When contribution only is sought, all the stockholders who can be reached by the process of the court may be joined in the suit.''

The foregoing has been consistently followed, not only in interpreting the federal act, but also in determining whether state acts violate the federal Constitution. Minnesota passed a statute imposing a stockholders' liability on stockholders of banks, and making the determination of the administrative officer not only conclusive as to the necessity for the levy, but also as to the amount thereof. In upholding the statute, the United States Supreme Court, in *Bernheimer* v. *Converse,* 206 U. S. 516, 528 [27 Sup. Ct. 755, 51 L. Ed. 1163], said:

"This statute came before the Supreme Court of Minnesota in *Straw & Ellsworth Mfg. Co.* v. *Kilbourne Boot & Shoe Co.,* 80 Minn. 125 [83 N. W. 36]. In that case it was given full consideration and its constitutionality sustained, and it was held that while the assessments upon the outstanding shares of stock in an amount necessary to meet the deficiency in the assets of the corporation was conclusive upon the stockholders as members of the corporation, yet the statute, properly construed, did not have the effect to deprive a person, when sued for the amount assessed on shares of stock under the provisions of the act, from showing that he was not a stockholder, or that he was not the holder of so large an amount of stock as was alleged, or that he had a claim against the corporation which in law or equity he might be enabled to set off as against a claim for assessments, or from making any other defense personal to himself; and that the

order of assessment was conclusive' upon stockholders only in so far as it decided the amount of assets or liabilities of the insolvent corporation and the necessity of making an assessment upon the stock to the extent and in the amount ordered.''

█ The argument that the act is too indefinite, vague and uncertain to be enforced, for the reason that the full extent of the liability thereunder cannot be ascertained, is untenable. The federal act, upon which our act is largely based, had many times prior to 1931 been interpreted by the federal courts. In *United States* v. *Knox*, 102 U. S. 422 .[26 L. Ed. 216], this same objection was discussed, and the court found it to be without merit. In that and other cases the same court, prior to 1931, gave an interpretation to the language in question which we must assume the California legislature had in mind in adopting the section.

█ The next contention of the defendant is that the act, by permitting the Superintendent of Banks to take possession of the assets of an insolvent bank, and to determine the necessity for, and the amount of, the assessment ''without previous judicial ascertainment of the necessity for such action'' and to make the determination of the Superintendent of Banks conclusive as to the necessity for an assessment, has conferred judicial powers on an administrative officer in violation of article VI, section 1, of the California Constitution. It may be assumed that the legislature in California, except as expressly provided in the Constitution, has no power to confer judicial powers on state-wide boards, or commissions, or on administrative officers. (*Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 Pac. 874].) It also may be assumed that if the act here under consideration did attempt to confer judicial powers on the Superintendent of Banks, the act to that extent would be in violation of article VI, section 1. Such principles have no application here because the powers here in question are not judicial, but are administrative or executive in their nature and are well within the power of the legislature to confer on an administrative or executive officer. Limiting the discussion solely to bank acts similar to the one here in question, and not relying on the host of cases dealing with other administrative officers or boards, an examination of many cases discloses that it has never been held that the powers in question are judicial. The many cases

collected and commented upon in an exhaustive annotation entitled: "Statute relating to closing of bank and assessment of stockholders as subject to constitutional objection of conferring judicial power upon administrative or executive officers," in 78 A. L. R. 774, establish that fact. The following statement appearing at the beginning of that annotation is amply borne out by the many cases later analyzed therein:

"Under all statutes thus far brought in question, the power given administrative officers to take charge of the affairs and property of insolvent banks, or those in an unsafe condition, and, if necessary, or under stated circumstances, to levy an assessment against stockholders, has been upheld, as against the constitutional objection that such power is judicial and may not be validly conferred upon administrative officers. The view generally taken, although language bearing on the point is not always precise, is that power of the sort in question is not in strictness, or in the constitutional sense, judicial, but consists merely of a practical discretion reasonably incident to the exercise of police power."

It is conceded by the defendant that the National Bank Act has withstood many attacks on this ground (see *Bushnell* v. *Leland*, 164 U. S. 684 [17 Sup. Ct. 209, 41 L. Ed. 598]; *Casey* v. *Galli*, 94 U. S. 673 [24 L. Ed. 168]; *Kennedy* v. *Gibson, supra; United States* v. *Knox, supra; In re Chetwood*, 165 U. S. 443 [17 Sup. Ct. 385, 41 L. Ed. 782]), but it is his contention that under the federal Constitution the Congress may confer judicial powers on administrative officers and boards while, under the California Constitution the legislature possesses no such general power. Assuming that this distinction in powers exists there are two answers to the contention. In the first place, the United States Supreme Court has directly held that the comparable powers conferred on the comptroller of the currency are not judicial. (*Concord First National Bank* v. *Hawkins*, 174 U. S. 364, 373 [19 Sup. Ct. 739, 43 L. Ed. 1007].) In the second place, in every state where the question has been presented and where a determination was required under constitutional provisions similar to our own, it has been held that the powers involved are not judicial. (See cases collected in *American State Bank* v. *Jones*, 184 Minn. 498 [239 N. W. 144, 78 A. L. R. 774].)

The next point urged is based upon one of the admitted facts in this case, namely, that all of the stock held by the defendant upon which liability has been imposed, was acquired by him prior to the effective date of the statute—August 14, 1931. It is contended that to impose liability on a stockholder, based upon ownership of stock owned prior to the passage of the statute imposing the liability, is to impair the obligation of the stockholder's contract in violation of article I, section 10, of the United States Constitution, and article I, section 16, of the state Constitution. The contract referred to must be deemed to be the contract between the stockholder and the corporation. The question then is, can the legislature, in the absence of constitutional prohibition, lawfully impose a liability on the ownership of stock, which, when acquired, was not subject to such liability? Section I of article XII of the state Constitution, both before and after its amendment in 1930, expressly provided: "All laws now in force in this State concerning corporations and all laws that may be hereafter passed pursuant to this section may be altered from time to time or repealed." This section contains a complete answer to the question now being considered, and this is so, even if it be assumed that the laws in force at the time the stock was purchased are read into and become a part of the stockholder's contract with the corporation, for the very obvious reason that the provision above quoted must be read into the charter of every corporation. The contract between the stockholder and the corporation is subject to the exercise of this reserved power. A case in point is *McGowan* v. *McDonald*, 111 Cal. 57 [43 Pac. 418, 52 Am. St. Rep. 149], an action against the stockholders of a bank under the general stockholders' liability act then existing. The stockholders defended on the ground, among others, that the bank was organized at a time when the statute under which it was formed provided for no such liability as to them. It was held that there was no merit in the defense. Speaking of the power of the legislature to change the contract between the stockholder and the corporation, the court stated (p. 66):

"It is objected, however, that if the provisions of the Code and Constitution are applicable they impose obligations upon appellants for which they were not liable when they became stockholders, and are in conflict with that provision of the

Constitution of the United States which inhibits the states from passing laws impairing the obligation of contracts, and are therefore as to them unconstitutional and of no effect.

"The answer to this objection is that the constitution of 1849 provided: 'Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed.' (Const., art. IV, sec. 31.)

"Under the authority thus conferred both the legislature and the people had power to change the law in regard to the liability of stockholders, without violating any provision of the constitution of the United States."

The principles above enunciated are in accord with the decisions of the United States Supreme Court and with the overwhelming weight of authority in other jurisdictions. (*Sherman* v. *Smith,* 1 Black (66 U. S.), 587 [17 L. Ed. 163]; *Barth* v. *Pock,* 51 Mont. 418 [155 Pac. 282]; *Melaven* v. *Schmidt,* 34 N. M. 443 [283 Pac. 900]; *Williams* v. *Nall,* 108 Ky. 21 [55 S. W. 706]; *Somerville* v. *St. Louis Min. & Mill. Co.,* 46 Mont. 268 [127 Pac. 464; L. R. A. 1915B, 811]; *Maxwell* v. *Thompson,* 232 N. Y. 619 [134 N. E. 596]; *Bank of Blytheville* v. *State,* 148 Ark. 504 [230 S. W. 550].)

It is true that some of the cases cited by the defendant hold that a new liability cannot lawfully be imposed on a stockholder by a legislative enactment passed after he has purchased his stock, but an examination of most of those cases discloses that they were decided in states where, when the stock was purchased, there was no constitutional provision reserving in the legislature the power to alter or amend or repeal the existing laws as to corporations. (See for example *Yoncalla State Bank* v. *Gemmill,* 134 Minn. 334 [159 N. W. 798, L. R. A. 1917A, 1223]; *Schramm* v. *Done,* 135 Or. 16, 293 Pac. 931]; *Hammóns* v. *Watkins,* 33 Ariz. 76 [262 Pac. 616].) Such cases are not in point.

The next point urged by the defendant and by many *amici curiae* is that the 1931 act is unconstitutional in so far as it attempts to impose a liability on any stockholder for debts incurred prior to the effective date of the statute. Under the principles last above discussed, a stockholder is liable, as limited in the act, regardless of when he purchased the stock, for that portion of the bank's indebtedness arising

subsequent to August 14, 1931. In other words, the act is constitutional as to all stockholders, regardless of when they acquired their stock, in so far as its prospective operation is concerned. It is earnestly urged, however, that as to debts of the corporation incurred prior to August 14, 1931, it is unconstitutional to assess stockholders to pay any portion of that liability. It is contended that to impose the liability as to such antecedent debts, would be to impair the obligation of the contract between the stockholder and the creditor. The language of the act itself is such that it is susceptible of the interpretation that the assessment collected thereunder may be used by the Superintendent of Banks to pay all the debts of the insolvent bank, including those incurred prior to August 14, 1931. Section 1 of the act provides that "the stockholders of every banking corporation . . . shall be held individually liable . . . for all contracts, debts and engagements of such corporation. . . . " Section 2 provides in part that when the Superintendent of Banks finds it necessary to levy an assessment "to pay the debts" of the bank "all sums collected from any such assessment . . . shall be used . . . against the liquidation of claims in the same manner as the assets of the bank are so used. . . . If after the payment of all liabilities against such bank" any surplus shall remain, the stockholders are entitled to a *pro rata* return. Although this all inclusive language can be interpreted so as to include a liability for antecedent debts, inasmuch as the language can also be interpreted to apply only to future debts, under well settled principles of interpretation, we must adopt the latter construction, if to adopt the former would render the act unconstitutional.

Although there are cases to the contrary, the better reasoned cases, in our opinion, hold that such an act must be interpreted to apply only to prospective debts, and that to apply it to antecedent debts would be to render the act unconstitutional.

 The question as to the date on which section 322 of the Civil Code was repealed is determined in the case of *Kaysser* v. *McNaughton, ante,* p. 248 [57 Pac. (2d) 927], L. A. 15473, this day decided. It is held in that case that the old stockholders' liability remained in effect until August 14, 1931, the date of the taking effect of the repeal of said section 322. Under the doctrine of *Coombes* v. *Getz,* 285

U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], the creditors whose debts were created prior to August 14, 1931, possessed certain contractual rights against the then stockholders. These rights were to proceed directly against the then stockholders for the proportion of the debts, as provided in section 322. If the creditors brought suit within the statutory period, they could have enforced this liability against the stockholders and, for all that appears in this action, may have done so. If the creditors did not see fit to pursue this remedy, they must be deemed to have waived it. Under *Coombes* v. *Getz, supra,* the repeal of the liability did not affect the contractual rights of existing creditors.

By a parity of reasoning, the stockholders as to those prior debts likewise had certain contractual rights. If the contract of the creditor is entitled to constitutional protection, so must the contract of the debtor. These rights were that the stockholders were to be liable only to the extent provided in section 322. The record shows that defendant owned all the stock upon the ownership of which liability is here sought to be imposed, prior to August 14, 1931. We are not here presented with the question of the power of the legislature to impose liability for prior debts on those who acquired their stock subsequent to August 14, 1931. The question here presented is as to the power of the legislature to impose an additional liability on defendant for debts incurred prior to August 14, 1931. As to defendant, and others similarly situated, to impose the additional and so-called double liability here sought to be imposed for those past debts would be to give the creditors owning those debts a right against defendant which they did not possess when the debt was incurred and, by the same reasoning, to impose on the defendant a liability not existing when the debt was incurred. This would impair not only the obligation of contract, but also would deprive defendant of his property, without due process. The mere fact that the additional liability against the stockholders cannot be enforced directly by the creditor, but is enforced by the Superintendent of Banks for their benefit is immaterial. If the legislature had attempted directly to amend section 322 of the Civil Code so as to confer additional liabilities on existing stockholders for past debts, such amendment would be obviously unconstitutional. What the legis-

lature is prohibited from doing directly, it cannot do indirectly.

The principles herein enunciated have been declared in many cases. (*Barnes* v. *Arnold,* 23 Misc. 197 [51 N. Y. Supp. 1109] ; aff. in 45 App. Div. 314 [61 N. Y. Supp. 85] ; Id., 169 N. Y. 611 [62 N. E. 1093] ; *United States* v. *Stanford,* 69 Fed. 25; aff. in 70 Fed. 346; Id., 161 U. S. 412 [16 Sup. Ct. 576, 40 L. Ed. 751] ; *Pate* v. *Bank of Newton,* 116 Miss. 666 [77 So. 601] ; *Smathers* v. *Western Carolina Bank,* 135 N. C. 410 [47 S. E. 893].) In these and many other cases that could be cited, the particular stockholders' liability acts there being considered, many of them bank acts similar to the one here under consideration, although using language equally as inclusive as the California act, were held to apply only to debts incurred subsequent to the effective date of the act, so far as existing stockholders were concerned. The courts indicated that any other interpretation would render the act unconstitutional.

Plaintiff cites several cases (*Davis* v. *Moore,* 130 Ark. 128 [197 S. W. 295] ; *Bank of Blytheville* v. *State,* 148 Ark. 504 [230 S. W. 550] ; *Donaghey* v. *Wasson,* 190 Ark. 1123 [82 S. W. (2d) 856] ; *Baumgardner* v. *State,* 48 Ohio St. 5 [192 N. E. 349]) that do hold that a stockholders' liability act such as the one here involved can be applied to antecedent acts. The weight of authority and, in our opinion, the better reasoned cases, are to the contrary.

In support of his argument that the act should be interpreted to include antecedent debts, and that, so interpreted, the act is constitutional, plaintiff contends that the present liability did not arise when the debts were incurred, but when the superintendent levied the assessment, that if any stockholder after August 14, 1931, desired to avoid the possibility of liability for past debts, he could have sold his stock. This argument is not convincing. To compel the sale of property in order to avoid liability for past debts would, equally with an actual taking of the property, be to deprive such stockholders of their property without due process. The liability, although imposed when the Superintendent of Banks levies the assessment, if plaintiff is correct in his interpretation as to past debts, would be imposed for the benefit of creditors who had no such right when the debts were incurred, to the injury of existing debtors who

had no such liability when the debts were incurred. This, as already held, would impair the stockholders' contract rights.

Plaintiff also seeks to sustain his contention on the argument that either under the reserved power to alter or amend laws affecting corporations or under the police power, the legislature has the power thus to affect past contract rights. Neither the police power nor the reserved power can justify the arbitrary imposition of a liability for past debts of a corporation on existing stockholders, when these debts created a contract between the creditor and the stockholder. Such an act would clearly be arbitrary and unreasonable.

For still another reason, if we hold that the act applies to antecedent debts, it would be unconstitutional to that extent. In *Wood* v. *Hamaguchi, supra,* it was held that so long as article XII, section 3, was in the Constitution, no liability other than that provided in that section could be imposed on stockholders. That section was not repealed until November 4, 1930. Obviously, to impose any further liability on stockholders for debts incurred prior to that date would be to impose a liability that it was expressly held in *Wood* v. *Hamaguchi* could not be imposed. The same conclusion would follow as to liabilities incurred after November 4, 1930, and prior to August 14, 1931, for the reason that section 322 remained in effect until the latter date and, until that date, the rights of the stockholders, as well as of the creditors, had become fixed under the then existing law.

For the foregoing reasons we therefore hold that the act now in effect, properly interpreted as to existing stockholders, applies only to debts incurred subsequent to August 14, 1931. This interpretation, however, does not require a reversal of the judgment. It is alleged, and not denied, that the subscribed and outstanding capital stock of the bank, at the times here involved, amounted to $116,600, divided into 1166 shares of the par value of $100 each. The total amount that could possibly be raised by the par value assessment permitted by the act is, therefore, $116,600. According to the stipulation of the parties, the debts of the bank when the superintendent took possession were $925,055.42, of which amount the sum of $512,013.07 was incurred after August 14, 1931. It is obvious that the amount of the debts incurred since the act was passed far exceeds the amount of the assessment.

This indicates sufficiently the necessity for the assessment. It is no answer to say that the record does not show the assets of the bank and that the proportion of the assets lawfully allocatable to subsequently incurred debts, plus the assessment, might exceed those debts. The defendant has not questioned the necessity for the assessment. If he desired to do so, it was a matter of defense, and he must be deemed to have waived it by failing to plead it or otherwise appropriately raise the question. Under such circumstances, if the assessment plus the assets ultimately proves to be in excess of the liabilities to which the same lawfully may be allocated, then, under the express terms of the act, the defendant will be entitled to a *pro rata* return of the assessment.

Other points are urged by defendant but, in our opinion, do not warrant further discussion.

The judgment is affirmed.

Thompson, J., Waste, C. J., Langdon, J., Conrey, J., and Seawell, J., concurred.

Rehearing denied.