[Civ. No. 59913. Second Dist., Div. Two. Apr. 20, 1981.]

ALPHA STANDARD INVESTMENT COMPANY, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

John H. Larson, County Counsel, and Mary F. Wawro, Deputy County Counsel, for Defendant and Respondent.

OPINION

**ROTH, P. J.**—We discuss the constitutional validity of those portions of county rent regulation ordinance No. 11950 enacted by the Board of Supervisors of Los Angeles County which spell out the procedure and the limitations within which landlords who did not demand a rent increase between May 31, 1978, and July 22, 1979, could increase rents over the base rent charged on May 31, 1978, and those who did could not. The ordinance permits those who did not so raise rents an increase of 15.56 percent and limits those who did to a 7-1/2 percent increase.

Appellant does not question the basic right of board to exercise its legislative power to relieve a housing shortage by economic regulation nor is it urged that the board was motivated by any motive other than a sincere attempt to effect a comprehensive plan whereby relief in the housing situation would be granted to tenants and under which landlords would receive a just and reasonable return on their rental units.

Appellants sought a preliminary injunction in the trial court and the sole issue raised in that court and reiterated before us is that the ordinance in the particulars referred to has the effect of and is a bill of attainder.

On January 7, 1980, the trial court herein made its minute order reciting additional pertinent facts as follows: "This application for preliminary injunction was previously submitted. It is now denied.

■ "At stake is a challenge to the portion of the [Los Angeles] County's rent control ordinance which allows a larger percentage increase in rents to landlords who have not raised rents since May 31, 1978, than to those who have. Plaintiff, a landlord who increased its rents since May 31, 1978, challenges the constitutionality of the rel-

evant portion of the ordinance as a 'bill of attainder.' A reading of plaintiff's excellent points and authorities quickly disabuses one of any notion that the challenge is frivolous or lightly made despite its uniqueness. A substantial argument is made and must be dealt with on that basis.

■ "A bill of attainder is 'punishment' directly inflicted by the legislature on a person or specified class for an action or status taken or existing prior to the date of the enactment. Historically, it involved the punishment of death legislatively imposed, but by judicial construction in the United States, the Bill of Attainder Clause also prohibits a 'bill of pains and penalties' by which lesser punishment (banishment, punitive seizure of property, imprisonment, etc.) is legislatively imposed on a particular individual or class.

"Sections 4B and 4C of Ordinance 11,950 read as follows:

"'B. For a rental unit which has not had a rent increase (whether imposed by the landlord of any predecessor landlord) since May 31, 1978, the landlord may increase the rent for said rental unit by an amount not to exceed 7.5 percent.

"'C. A landlord may increase the rent on any rental unit not more often than once within the twelve (12) month period following the effective date of this ordinance by an amount not to exceed 7.5 percent. Any increase in rent pursuant to this paragraph shall be in addition to any increase in rent pursuant to paragraph B of this section . . . .'

■ "The ordinance questioned here singles out a particular class—landlords who have legally raised rents after May 31, 1978—and provides that they may not raise rents to the same level which may be used by other landlords who have not so raised rents. Accordingly, it must be said that the legislative body has singled out a particular class and imposed consequences on it not imposed on others by reason of action not illegal when done. If the difference in treatment may be said to be 'punishment,' the treatment imposed would appear to fall under the prohibition of the Bill of Attainder Clause.

"The focus of the case, therefore, must be as to whether the treatment of plaintiff (and others in the same category) is 'punishment' within the meaning of the Bill of Attainder Clause.

"The most recent expression of the U.S. Supreme Court on the problem is *Nixon* v. *Administrator of General Services*, 433 U.S. 425, 53 L.Ed.2d 867, 97 S.Ct. 2777 (1977), where a congressional enactment regulating control of Mr. Nixon's papers was challenged as a bill of attainder. The portion of Justice Brennan's opinion on the bill of attainder point was apparently concurred in by 6 justices and is taken by this court as the definitive guide to the question of what is 'punishment' for purposes of a bill of attainder.

"Justice Brennan first makes the point that (433 U.S. at pp. 472-473):  ■  'Forbidden legislative punishment is not involved merely because the act imposes burdensome consequences. Rather, we must inquire further whether Congress . . . "inflicted punishment" within the constitutional proscription against bills of attainder.'

"Accordingly, 'burden' alone does not punishment make. "The opinion then discusses three approaches to determining whether the legislatively inflicted burden or consequence is 'punishment.' In essence, they are:

"1. An historical approach, examining whether the burden is like those usually associated with bills of attainder or bills of pains and punishments.

"2. A motivational approach, examining whether a desire to penalize is discernible in the legislative history.

"3. A functional approach, examining the question of whether the burden imposed 'can be said to further nonpunitive legislative purposes.'

"The first two categories may be quickly discarded here. First, nothing like the traditional death, imprisonment, banishment, or property seizure consequence of prior action has been imposed by the Board of Supervisors. Second, no convincing evidence of punitive (as opposed to regulatory) intention is presented from the legislative consideration of the ordinance. Justice Brennan's words seem opposite [*sic*] here (433 U.S. at 480): '. . . . the decided absence from the legislative history of any congressional sentiments expressive of this purpose [motivation to punish] is probative of nonpunitive intentions and largely undercuts a major concern that prompted the bill of attainder prohibition; the fear that the legislature, in seeking to pander to an inflamed popular constituency, will find it expedient openly to assume the mantle of judge—or worse still, lynch mob.'

"Accordingly, the 'functional' approach is the critical one here. The Brennan opinion says (433 U.S. at 475-482): ██ 'But our inquiry is not ended by the determination that the Act imposes no punishment traditionally judged to be prohibited by the Bill of Attainder Clause. Our treatment of the scope of the Clause has never precluded the possibility that new burdens and deprivations might be legislatively fashioned that are inconsistent with the bill of attainder guarantee. The Court, therefore, often has looked beyond mere historical experience and has applied a functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes . . . Where such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers. [Sic.] The [Presidential Recordings and Material Preservation] law plainly must be held to be an act of nonpunitive legislative policymaking. Legislation designed to guarantee the availability of evidence for use at criminal trials is a fair exercise of Congress' responsibility to the due process of law in the fair administration of criminal justice . . . .'

"In short, we are looking for a 'legitimate legislative purpose' to justify the burden placed on a particular class. While the language used is similar to that commonly found in Equal Protection Clause analysis, its function here is different; if a 'legitimate legislative purpose' is found, it leads to the conclusion that the legislative 'purpose' was not 'punishment.'

██ "We turn, therefore, to the County's justification for the burden placed on the class. Nothing in the 'Declaration of Purpose' enacted with the ordinance bears on the question at issue. However, County Counsel offers the following explanation of the difference in treatment among landlords:

"In the instant case, there is a rational relationship to a legitimate legislative purpose. Recognizing the severe shortage of residential rental housing and the rising rents exploiting such shortage, the Board of Supervisors sought to restrict rents as much as possible while at the same time permitting landlords in all cases to realize a just and reasonable return on their rental units. Thus, under the statutory scheme, all landlords were permitted to charge, without special application to the County Rent Adjustment Commission, the rent in effect on May 31,

1978, plus 7-1/2% thereof. However, the Board of Supervisors recognized that there were some landlords who had not increased rents for an appreciable period of time. In many cases this occurred where 'landlords wished to cooperate with and treat kindly those senior citizens on fixed incomes finding it increasingly more difficult to live within their budget. However, many landlords foregoing such rental increases may have deferred maintenance and upkeep of their buildings. Because of such deferred maintenance and for other reasons, it is likely that in many cases the May 31st rent plus 7-1/2% would be insufficient to permit these landlords to realize a just and reasonable return. Thus by permitting these landlords an additional 7-1/2%, the number of special applications for a rent increase based on the inability to obtain a just and reasonable return would be reduced.

"'It might also be pointed out that since such landlords had not in the past exploited the critical shortage of rental housing, it could reasonably be assumed that rent increases would be imposed in the future on a limited and reasonable basis and that the danger of exploitation would not be present.'

"In essence, the reasoning is that the number of administrative proceedings to obtain extra increases would be reduced. The reasoning appears to be that landlords not increasing rents after May 31, 1978, would have a larger need for additional gross income to take care of maintenance deferred in the period of no increases. The rationale appears speculative and the reasoning, therefore, somewhat weak, but the court cannot say that there is no rational relationship to a legitimate legislative purpose.

"The County's justification also finds some support in the fact that a landlord is not necessarily adversely affected by the ordinance, depending on when and how much rents were raised after May 31, 1978. The calculations attached as Exhibit A to the County's Points and Authorities show that the total rent collectible during the two-year period of the ordinance (which expires on June 31, 1980) can, in certain circumstances, equal or exceed that of landlords who have not increased rents since May 31, 1978. The showing tends to negate punitive intent.

"There being a sufficient showing of a nonpunitive purpose, the court is constrained to hold that the challenged provisions are not invalid under the Bill of Attainder Clause."

Appellant contends the determination so articulated is in error. Thus it is urged that: "Relying on the opinion of Mr. Justice Brennan in *Nixon v. General Services Administration*, 433 U.S. 425 (1977) Judge [Harry L.] Hupp utilized a 'rational legislative purpose' test to determine if the questioned sections of the County Rent Control Law were punitive, and thus an attainder. Appellant takes issued [*sic*] with this approach for five reasons:

"A. The *Nixon* case was the classic example of a 'hard case'—one where the necessity of articulating a ratio decidendi automatically put it at war with established precedent.

"B. Mr. Justice Brennan's opinion was not that of the Supreme Court, but only of himself, Mr. Justice Stewart and Mr. Justice Marshall. It did not command a majority of the justices, and is therefore not binding as stare decisis.

"C. The decisions of the California Supreme Court establish that in the area of fundamental civil liberties, the California courts are free to establish greater protection under the California Constitution than is accorded by the United States Supreme Court in interpreting textually parallel provisions of the Federal Constitution.

"D. The 'rational legislative purpose' test, formulated in equal protection cases challenging economic legislation, is an inapposite import in the Bill of Attainder area, involving, as it does, one of the most fundamental of all libertarian guarantees contained in both our Federal and State Constitutions.

"E. Even the United States Supreme Court does not follow a 'rational legislative purpose' test in Bill of Attainder cases." [Citing *United States* v. *Brown* (1965) 381 U.S. 437 (14 L.Ed.2d 484, 85 S.Ct. 1707).]

Respecting appellant's first and second points of departure, it is enough to say that whether or not the *Nixon* case was "hard," our reading of it in no wise discloses it is "at war" with established precedent, but rather that it is entirely consistent therewith, albeit upon its own particular and peculiar facts. Moreover, it is not true that Mr. Justice Brennan's opinion was only that of himself, Mr. Justice Stewart and Mr. Justice Marshall, since it was expressly concurred in, so far as the

issue of attainder was concerned, by Justices Blackman and Powell[1] and, for all practical purposes, by Justice Stevens.

Appellant's third "reason," while no doubt validly expressing a settled principle of the law of this state (see *People v. Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]), does not, of course, operate so as to require the result sought, which on the facts present seems to us neither necessary nor desirable.

Finally, appellant's two remaining points are, in our view, without support. Not only does a cursory perusal of *Nixon* indicate the importance of legislative purpose in inquiries like that at bench, but that case specifically concluded that: ■ "[*United States v. Brown, supra*, 381 U.S. 437] left undisturbed the requirement that one who complains of being attainted must establish that the legislature's action constituted punishment and not merely the legitimate regulation of conduct. Indeed, just three Terms later, *United States v. O'Brien*, 391 U.S. 367, 388 n. 30, (1968), which, like Brown, was also written by Mr. Chief Justice Warren, reconfirmed the need to examine the purposes served by a purported bill of attainder in determining whether it in fact represents a punitive law." (*Nixon v. Administrator of General Services, supra*, 433 U.S. 425, 476, fn. 40 [53 L.Ed.2d 867, 912].)

Conceding that the manner in which an ordinance is drafted is not dispositive on the issue whether it is an attainder and that legislation fair upon its face may yet fall within constitutional proscriptions against such bills, we are satisfied the ordinance at issue here is not thus defective and, accordingly, we affirm Judge Hupp's reasoning as embodied in the order appealed from.

The order is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1981.

---

[1]Thus, Justice Blackman stated, "I specifically join Part VII [concerning the Bill of Attainder Clause] of the Court's opinion," while Justice Powell allowed that, "I join the judgment of the Court and all but Parts IV and V of its opinion." (*Nixon v. Administrator of General Services, supra*, 433 U.S. 425, 492 [53 L.Ed.2d 867, 921].)