[No. F005551. Fifth Dist. Jan. 2, 1986.]

PHIL SAGASER et al., Plaintiffs and Appellants, v.
DANIEL J. McCARTHY, as Director, etc., et al.,
Defendants and Respondents.

294

COUNSEL

Thomas, Snell, Jamison, Russell & Asperger and E. Robert Wright for Plaintiffs and Appellants.

Laurens H. Silver as Amicus Curiae on behalf of Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and Edwin J. Dubiel, Deputy Attorney General, for Defendants and Respondents.

OPINION

HANSON (P. D.), J.—In 1983, legislation was passed by the California Legislature authorizing the location of a prison in or near the City of Avenal in Kings County. (Stats. 1983, ch. 958, § 9.) The Department of Corrections (Department), which considered possible sites, became the lead agency (Pub. Resources Code, § 21067) for the preparation of an environmental impact report (EIR). After a draft EIR was completed, notice inviting comment was issued according to guidelines provided in the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).

The mandatory 30-day period for comment on the draft EIR provided for in the law ended on August 22, 1984. (Pen. Code, § 7004, amended to

§ 7007.) Appellants, however, offered no comments until September 26, 1984. When they were unsuccessful in challenging the adequacy of the report through administrative channels, appellants filed an action in Kings County Superior Court. Appellants pleaded six causes of action in a combined petition for writ of mandate and complaint for injunctive relief alleging violations of CEQA provisions, due process, equal protection, a failure to furnish information from public records, and a threatened waste of public funds. They also sought injunctive relief to prohibit groundwater withdrawals; this cause of action was bifurcated by the court and not heard below.

After a hearing, the court ruled in favor of respondents. Appellants filed a notice of appeal urging a reversal of the trial court's judgment on the ground they were denied an opportunity to challenge the adequacy of the EIR in the courts.

While appellants sought relief in the courts, Assembly Bill (AB) No. 2251 was introduced and passed by the Legislature; it was signed by the Governor on September 24, 1985. The 1985 legislation found in chapter 931, hereafter referred to as AB No. 2251, exempted three proposed prison sites, including one near Avenal (Section 34, Township 22 South, Range 17 East, Mount Diablo Base and Meridian), Kings County, from compliance with the requirements of CEQA. The bill carried an urgency clause, and became effective immediately upon the Governor's signing the legislation.

AB No. 2251 (Stats. 1985, ch. 931) is a prison-funding bill which also addresses prison construction. In section 4 of the bill, which adds section 21080.03 to the Public Resources Code, AB No. 2251 specifically exempts the Avenal prison from compliance with CEQA. In section 5, section 9 of the 1983 bill (Stats. 1983, ch. 958, § 9) is amended to designate a particular prison site for the Avenal facility and prohibit the use, for prison purposes, of ground water underlying that site. Section 2.5 of AB No. 2251 adds Penal Code section 7013, which provides that the Department shall contract with the Department of Water Resources or the Bureau of Reclamation to secure an alternative water supply for prison use.

Senate Bill (SB) No. 253 (Stats. 1985, ch. 933), passed during the same legislative session, concerns the expansion of various other prisons. Appellants cite SB No. 253 to highlight legislative discussions of EIRs and to indicate general legislative intent on the construction of prisons.

The pertinent texts of both bills are included in the appendix to this opinion.

After the passage of AB No. 2251, respondents moved to dismiss as moot the appeal filed by appellants, stating no property right exists in the prepa-

ration of an EIR. (See *Bakman* v. *Department of Transportation* (1979) 99 Cal.App.3d 665, 689-690 [160 Cal.Rptr. 583]; *Bookout* v. *Local Agency Formation Com.* (1975) 49 Cal.App.3d 383, 386-388 [122 Cal.Rptr. 668].) They argue no vested right stems from CEQA provisions and no constitutional duty arises on the part of a court to provide relief to those affected by the preparation of an EIR. (*Lee* v. *Lost Hills Water Dist.* (1978) 78 Cal.App.3d 630, 634 [144 Cal.Rptr. 510].) They also contend the EIR is clearly an evidentiary document only (*Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 821-822 [130 Cal.Rptr. 249]), and that AB No. 2251 is a procedural statute which is retroactive. Respondents urge the issue raised by the appeal is moot.

Because we hold that AB 2251 is constitutional and valid legislation, and because the validity of AB 2251 is the only issue before us, we must dismiss the appeal as moot. Appellants misconceive the very nature of the CEQA provisions. The rights derived from the environmental quality act are not of constitutional dimension and the Legislature constitutionally may eliminate any of its requirements. (*Lee* v. *Lost Hills Water Dist., supra,* 78 Cal.App.3d 630, 635.) We note that the Legislature itself is not included within the definition of a public agency pursuant to CEQA (Pub. Resources Code, § 21063).

We also point out that California courts rely upon federal precedents to aid in their interpretation of parallel provisions contained in the National Environmental Policy Act (NEPA) (42 U.S.C. § 4321 et seq.). In the environmental case, *Ely* v. *Velde* (4th Cir. 1971) 451 F.2d 1130, 1139, the Fourth Circuit court refused to elevate to a constitutional level such concerns as voiced by appellants. The federal act, NEPA, has been held to create only procedural, not substantive, rights. (*Morris* v. *Tennessee Valley Authority* (N.D. Ala. 1972) 345 F.Supp. 321, 324.) ■ The California Legislature has the right to "authorize" projects and to exempt them from the provisions of CEQA—just as does Congress in regard to NEPA (*Environmental Defense Fund, Inc.* v. *Froehlke* (8th Cir. 1972) 473 F.2d 346, 355).

Appellants attempt to defeat respondents' motion to dismiss the appeal by raising various issues, most of which attack the constitutionality of AB No. 2251. We discuss the issues raised by appellants and reject their arguments; we grant respondents' motion to dismiss. However, as to the sole issue of attorneys' fees, we remand the matter to the trial court for an evidentiary hearing and a determination as to what fees, if any, appellants are entitled under Code of Civil Procedure section 1021.5.

DISCUSSION

I

*The Provisions of SB No. 253*
*Do Not Prevail Over Those in AB No. 2251*

 Appellants contend without success that the amendments contained in SB No. 253 nullify certain provisions of AB No. 2251 exempting the Avenal prison from compliance with CEQA. They base their argument upon a broad reading of Government Code section 9605, which provides that a statute enacted later in time will prevail over one enacted earlier in the same legislative session.[1]

SB No. 253 carries a later chapter number (ch. 933) than AB No. 2251 (ch. 931). Appellants attempt to persuade us that language in SB No. 253 is contrary to and therefore repeals by implication provisions in AB No. 2251 exempting the Avenal prison from CEQA regulations. Appellants would have us impose the doctrine that when two or more statutes concern the same subject matter and are in irreconcilable conflict, the most recently enacted statute expresses the will of the Legislature. (*In re Thierry S.* (1977) 19 Cal.3d 727, 738-739 [139 Cal.Rptr. 708, 566 P.2d 610].)

These two statutes are not in irreconcilable conflict as is readily seen when their underlying purposes are considered. In SB No. 253, Penal Code section 7004 was renumbered to 7007 and amended to read as follows: "7007. (a) The Legislature hereby finds and declares that due to the lack of capacity for new inmates in the state prison system, the construction of new prison facilities is of utmost importance to the public safety and well-being. The Legislature further finds and declares that it is in the public's interest to

---

[1]Government Code section 9605 reads in pertinent part: "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions which are not altered are to be considered as having been the law from the time when they were enacted; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment. When the same section or part of a statute is amended by two or more acts enacted at the same session, any portion of an earlier one of such successive acts which is omitted from a subsequent act shall be deemed to have been omitted deliberately and any portion of a statute omitted by an earlier act which is restored in a subsequent act shall be deemed to have been restored deliberately.

"In the absence of any express provision to the contrary in the statute which is enacted last, it shall be conclusively presumed that the statute which is enacted last is intended to prevail over statutes which are enacted earlier at the same session and, in the absence of any express provision to the contrary in the statute which has a higher chapter number, it shall be presumed that a statute which has a higher chapter number was intended by the Legislature to prevail over a statute which is enacted at the same session but has a lower chapter number."

ensure that prisons are planned, designed, and constructed in a manner which is consistent with the California Environmental Quality Act and which minimizes environmental and other impacts upon the communities in which they are located. It is the intent of the Legislature that expeditious planning, construction, and operation of new prisons shall be achieved by so-called 'fast-tracking' of the environmental review process and by acceleration of any actions or proceedings brought pursuant to Division 13 (commencing with Section 21000) of the Public Resources Code, as provided in this section." Penal Code section 7007, subdivision (a), set out above does not repeal section 21080.03, added to the Public Resources Code by AB No. 2251. "21080.03 [Pub. Resources Code]. This division [Div. 13, California Environmental Quality Act] shall not apply to any activity or approval necessary for or incidental to the location, development, construction, operation, or maintenance of the prison in the County of Kings, authorized by Section 9 of Chapter 958 of the Statutes of 1983, as amended, and of the prison in the County of Amador (Ione), authorized by Chapter 957 of the Statutes of 1983, as amended."

■ A repeal by implication is not favored; there is a presumption against the operation of such a doctrine. (*In re Thierry S.*, *supra*, 19 Cal.3d 727, 744.) To avoid its application, statutes in question are read together in an attempt to reconcile rather than nullify their meaning. The doctrine is applied only when no rational basis exists for reconciling the statutes and to do so would destroy the integrity of both. (*Ibid.*)

■ Because the meanings of these two statutes can be harmonized without destroying the integrity of either, the doctrine does not come into play. Both bills recognize that California prison construction is an immediate concern. SB No. 253 states in part: "The state's prison system is currently overcrowded and overpopulated to the point California faces a public safety crisis. The prison population has increased during the past 2½ years at an average rate of 100 inmates each week; during much of 1985, the increase has averaged an additional 170 inmates per week. Most of these inmates were sent to prison because they committed violent crimes. The courts have determined that various conditions which were [indicants] of overcrowding must be corrected. The Legislature and the people of California have determined that immediate expansion of the prison system by the swiftest possible means is necessary to relieve the system from current and anticipated overcrowding and to maintain the public safety and security."

AB No. 2251 section 11 provides: "[I]mmediate expansion of the existing state adult prison system by the swiftest and most expeditious possible

means is necessary to relieve that system from current severe overcrowding, problems incident thereto, including inmate violence, and to maintain the public safety and security. The system is presently operating at over 150 percent of capacity and prison population is still increasing. Development of the proposed California State Prison, Kings County-Avenal, the proposed California State Prison, Amador County (Ione), and the proposed California State Prison, Kings County-Corcoran, are major components in the immediate expansion which are essential. These prisons cannot be developed, constructed, or placed in operation in time to assist in relieving the overcrowding, in maintaining public safety and security, or to comply with court orders unless this act takes effect immediately." Exemption of the Avenal prison and two additional prisons from CEQA is an immediate way to alleviate the recognized overcrowding of the California prison system; the "fast-tracking" provisions of SB No. 253 provide a followup to the problem. While SB No. 253 expresses the intent that prisons be constructed in conformity with CEQA, AB No. 2251 does not ignore the environmental problems involved in building a prison near Avenal. AB No. 2251 exempts the prison from CEQA compliance, but also prohibits the use of ground water at the prison site[2] and suggests a method for securing a water supply for the prison.[3]

There is no indication in the record that problems of traffic congestion, air or auto, urban blight, population concentration, pollution, or a myriad of other concerns often associated with the construction of public buildings have been crucial in planning a Kings County prison site. However, it is uncontradicted that the issue of a water supply for the proposed prison has been the main environmental concern affecting construction at Avenal. Even though the construction of the proposed prison need not be in compliance with CEQA, under AB No. 2251, because the ground water from the Kettleman Plain Basin cannot be used, the prison will be constructed in a manner consistent with the goals of CEQA.

The statutes in question can be harmonized rationally. In light of the Legislature's recognition of overcrowded conditions in the prison system, the integrity of neither statute is challenged and an implied repeal does not occur.

II

*AB No. 2251 Does Not Deny the
Farmers Equal Protection.*

We reject appellants' argument that the statute violates state or federal provisions guaranteeing equal protection of the laws.

---

[2]Section 5 of AB No. 2251, amending section 9 of the 1983 bill, specifically prohibits the use of ground water underlying Section 34.

[3]Section 2.5 of AB No. 2251 (adding Pen. Code, § 7013) directs the Department to contract for an alternative water supply.

■ "The constitutional bedrock upon which all equal protection analysis rests is composed of the insistence upon a rational relationship between selected legislative ends and the means chosen to further or achieve them." (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 786 [160 Cal.Rptr. 102, 603 P.2d 19].) Where the legislative process requires the designation of various classes, the Legislature is granted broad discretion in designating and defining a class. (*Dribin* v. *Superior Court* (1951) 37 Cal.2d 345, 351 [231 P.2d 809, 24 A.L.R.2d 864].) However, the particular classification must rest upon some reasonable distinction fairly related to the object of the regulation. (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 787.) The distinctions drawn must have some relevance to the purpose for which the classification is made. (*Id.,* at p. 791.)

■ Appellants are members of a larger class of people who reside or own property near the proposed site of a prison. Such a class ordinarily is entitled to participate in the development of an EIR on the proposed site[4] and, if all administrative remedies concerning a challenge to the adequacy of an EIR are exhausted, the class may seek review of the report in the courts. The enactment of AB No. 2251 has made this right of review unavailable to appellants or to those interested in challenging the environmental impact of two other prisons specified in the bill.[5]

■ Although legislation may impose special burdens upon a defined class to achieve a permissible goal, there must be some rationality in the nature of the class. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) To decide whether the legislation is permissibly drawn or violates equal protection, the type of interest involved must be determined.

■ Various cases have held that although public policy considerations are inherent in environmental challenges, no fundamental right is involved in the granting of a construction permit. The interest involved here does not rise to the level of a fundamental interest. (*Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 280 [152 Cal.Rptr. 585]; *Markley* v. *City Council* (1982) 131 Cal.App.3d 656, 665-667 [182 Cal.Rptr. 659] [summarizes various cases finding no fundamental interest].) Because appellants' interest in challenging the EIR is not a fundamental one, the provision in AB No. 2251 withdrawing from appellants this right of review while maintaining it for others similarly situated will be upheld if it is rationally related to a "stated legislative objective." (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 791.)

---

[4]Future prisons not specifically exempted from CEQA by AB No. 2251 will be subject to an expedited CEQA review process.

[5]The other prisons exempt from CEQA are in Corcoran and Ione.

The legislative objective which is fostered by AB No. 2251 is efficient and effective management of penal institutions. The bill addresses the problem of severe overcrowding in the adult prison system; the Legislature is concerned that congestion contributes to inmate violence and that such violence will threaten public safety and security. No one can deny that prison security is a legitimate state interest.

Furthermore, the provisions within AB No. 2251 are rationally related to this state interest. The Legislature recognized that the current prison system is operating at 150 percent capacity, and the number of prison inmates is increasing. Immediate expansion of physical facilities is essential. For this reason, the Legislature exempted three prison sites (of which Avenal is one) from the provisions of CEQA and made the bill operative immediately upon signature by the Governor.

■ "[W]hen the legislative body proposes to address an area of concern in less than comprehensive fashion by 'striking the evil where it is felt most' [citation], its decision as to where to 'strike' must have a rational basis in light of the legislative objectives." (*Hays* v. *Wood, supra,* 25 Cal.3d at p. 791.) ■ The three prisons named in AB No. 2251 are further along than some in the planning process as indicated by the record and argument, and, therefore, are most likely to be expedited. Through AB No. 2251 the Legislature addressed the major environmental problem while eliminating the necessity of CEQA compliance. Because of the Legislature's concern that immediate expansion within the correctional system take place, the means employed are rationally related to the desired "legislative objective" and the equal protection argument fails.

### III

■ *AB No. 2251 Does Not Violate Article IV, Section 16
Prohibiting Legislation Meant to Affect a Special Class.*

Appellants further contend AB No. 2251 is vicious legislation burdening a special class in violation of California Constitution, article IV, section 16. "(a) All laws of a general nature have uniform operation. [¶] (b) A local or special statute is invalid in any case if a general statute can be made applicable."

■ *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1022-1026 [140 Cal.Rptr. 168], provides a good general discussion of California Constitution article IV, section 16. Quoting from an early California Supreme Court case, the *McGlothlen* court states: " 'It will not be presumed that it was intended to deprive the legislature of all power to

adapt its laws to the varying conditions of its inhabitants. From necessity it has been held that the legislature may classify in order that it may adapt its legislation to the needs of the people. If this cannot be done laws will not always bear equally upon the people. This classification, however, must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification, that legislation really local or special may seem to be general, but for the purpose of meeting different conditions naturally requiring different legislation. [Citation.]' [*Darcy* v. *Mayor etc. of San Jose* (1894) 104 Cal. 642, 645-646.]" (71 Cal.App.3d at p. 1025.) ▆▆ The immediate need to relieve current overcrowded conditions in the state prison system creates such a necessity.

In addition, case law is in general agreement that article IV, section 16, and article I, section 7 (equal protection) have essentially the same meaning. (*Rainey* v. *Michel* (1936) 6 Cal.2d 259, 268 [57 P.2d 932, 105 A.L.R. 148].) In fact, section 16, subdivision (a) (formerly found in art. I, § 11), is considered substantially equivalent to the equal protection clause of the United States Constitution. (*Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 233 [98 Cal.Rptr. 449, 490 P.2d 1137]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596, fn. 11 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *McGlothlen* v. *Department of Motor Vehicles, supra,* 71 Cal.App.3d 1005, 1025.) The analysis under issue II is equally applicable to uphold the constitutionality of AB No. 2251 on the special class issue.

## IV

### *AB No. 2251 Is Not an Illegal Bill of Attainder.*

▆▆ Appellants next argue that the provisions in AB No. 2251 exempting the Avenal prison from CEQA and designating a specific site, are unconstitutional bills of attainder. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.) Appellants read the constitutional provision much too broadly.

▆▆ Historically, a bill of attainder is a legislative act which, without a judicial hearing, designates a punishment upon a person or specified class. (*California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 224-225 [108 Cal.Rptr. 251].) ▆▆ Although those challenging the environmental impact of the Avenal prison make up a specified class, we do not agree that this class is being "punished" within the meaning of the bill of attainder clause. (*Alpha Standard Investment Co.* v. *County of Los Angeles* (1981) 118 Cal.App.3d 185, 189 [173 Cal.Rptr. 328].)

"Forbidden legislative punishment is not involved merely because the Act imposes burdensome consequences." (*Nixon* v. *Administrator of General Services* (1977) 433 U.S. 425, 472 [53 L.Ed.2d 867, 909, 97 S.Ct. 2777].) The question of what is "punishment" is determined through the application of one of three tests:

" '1. A[] historical approach, examining whether the burden is like those usually associated with bills of attainder or bills of pains and punishments.

" '2. A motivational approach, examining whether a desire to penalize is discernible in the legislative history.

" '3. A functional approach, examining the question of whether the burden imposed "can be said to further nonpunitive legislative purposes." ' " (*Alpha Standard Investment Co.* v. *County of Los Angeles, supra,* 118 Cal.App.3d at p. 190.)

The first test does not apply to the facts of this case. The second test also is not applicable. Eliminating the requirement of an administrative report does not constitute a punitive act and it is unreasonable to conclude appellants are being punished for pursuing their legal remedies. For purposes of analysis, only the third test is appropriate.

We again use the language of balancing the burdens imposed against stated legislative goals. However, here, its function differs; if a legitimate legislative purpose is found, the legislative purpose is not punishment. (*Alpha Standard Investment Co.* v. *County of Los Angeles, supra,* 118 Cal.App.3d at p. 191.) The stated legislative purpose of AB No. 2251 is the immediate expansion of the adult prison system. Because of chaotic prison conditions, the Legislature decided that immediate expansion is necessary to protect the public health and safety. We contrast this purpose with the burden of not being able to obtain review of an administrative report that may or may not affect the design or location of a proposed prison. Furthermore, any burden established by AB No. 2251 is diminished by provisions in the bill which attempt to solve the major environmental problems attacked by appellants.

The legislative purpose of immediately expanding the prison system clearly is legitimate and punishment does not result. AB No. 2251 is not an illegal bill of attainder.

V

*AB No. 2251 Does Not Illegally Grant a Special
Privilege Pursuant to California Constitution,
Article IV, Section 8.*

Pursuant to California Constitution, article IV, section 8, subdivision (d), legislation with an urgency provision may not grant a special privilege.

Appellants contend section 9 of chapter 958 of the Statutes of 1983 as amended by section 5 of AB No. 2251, which authorizes the construction of a prison on Section 34 near Avenal, is unconstitutional because it grants a special privilege to certain owners of land. Appellants argue the law has the practical effect of giving the owners of Section 34 the special privilege of selling their land to the state for an "inflated price."

We do not agree that this designation of land in the statute is an award of a "special privilege" within the scope of California Constitution, article IV, section 8, subdivision (d). If it were, that portion of AB No. 2251 would have to be stricken[6] as invalid,[7] leaving the original language of the 1983 legislation authorizing a prison in or near the City of Avenal: "Notwithstanding any other provision of law, the Department of Corrections is authorized to construct and establish a 3,000-bed, minimum security (Level 1 and Level 2), work-based prison in the City of Avenal or within five miles of the city limits of Avenal in Kings County." (Stats. 1983, ch. 958, § 9.) Presumably, under the earlier language, the state could still locate the prison on Section 34.

Section 5 of AB No. 2251, amending section 9 of the earlier statute, is not the type of "special privilege" proscribed in California Constitution, article IV, section 8, subdivision (d). The provision merely authorizes prison construction on a site. It does not mandate purchase of the site or require the owners to sell the land to the state. The owner of Section 34 could refuse to sell to the state. The state could decide that the prison should be built on another site. AB No. 2251 merely *authorizes* construction on a particular site. Should another site be purchased, the Legislature could amend the provision to authorize construction on the new site. Section 5, in amending section 9 of the 1983 statute, grants neither an exclusive nor a special privilege.

### VI

*AB No. 2251 Does Not Retroactively Deny Farmers Due Process.*

The procedural rights created by CEQA, or by NEPA on the federal level (see *Morris* v. *Tennessee Valley Authority, supra,* 345 F.Supp. 321, 324), do not operate as constitutional safeguards nor create fundamental, substantive rights as discussed above. However, we address appellants' due process

---

[6] Section 10 of AB No. 2251 provides that any invalid provision of the bill may be severed to maintain the effectiveness of the remaining portions.

[7] If section 5 of AB No. 2251, amending section 9 of the 1983 bill is severed from AB No. 2251, appellants will lose the specific provision prohibiting the Avenal prison from using any of the ground water underlying Section 34.

objection. Appellants contend a statute may not be applied retroactively to impair an individual's "vested rights." A right is vested when it is so perfected that it cannot be taken away by statute (*Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520, 531 [41 Cal.Rptr. 190]); the courts determine what constitutes a vested right. (*Ibid.*) " ' "Vested rights, of course, may be impaired 'with due process of law' under many circumstances." ' " (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)

■ Recent case law delineated six factors to aid in determining whether a right is vested, and when a statute may be applied retroactively. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592.) The *Bouquet* factors include: (1) the significance of the state interest served by the law, (2) the importance of retroactive application of the law to further that interest, (3) the extent of reliance on the former law, (4) the legitimacy of that reliance, (5) the extent of actions taken in reliance on the former law, and (6) the extent to which retroactive application of the new law would disrupt those actions. (*Ibid.*)

■ The state interest to be served here is the "immediate expansion of the existing state adult prison system" (AB No. 2251, § 11) in the swiftest manner possible to relieve severe overcrowding and prevent inmate violence. The Legislature has deemed this legislation crucial to preserve the public peace, health and safety. Retroactive application is necessary to further the purpose of the bill, and effectuate the important state interest. While appellants legitimately relied upon the fact they could challenge the adequacy of the EIR in the courts, and litigated that issue to the appellate level, the retroactive application of the statute eliminates appellants' claim.

However, the crux in resolving such an issue is the strength of the competing interests. Even a vested right can be diminished by retroactive application if such application is demanded by a sufficiently important state interest. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 761 [218 Cal.Rptr. 31, 705 P.2d 354]; *In re Marriage of Roesch* (1978) 83 Cal.App.3d 96, 106 [147 Cal.Rptr. 586].) The state concern in alleviating critical overcrowding in the state prisons is such an interest and prevails over appellants' reliance on obtaining judicial review of an administrative report,[8] particularly when the major environmental issue of concern to the appellants was addressed in the same legislative packet.[9] Under the six factors set out in *Bouquet*, plus a weighing of competing interests, retroactive application is permissi-

---

[8]Even if preparation of the EIR were required, the state is under no obligation to adopt every suggestion in the report.

[9]This is in reference to the ban on the use of ground water found within section 5 of AB No. 2251, amending section 9 of the 1983 statute.

ble. Appellants' due process rights are not violated in this instance, whatever approach their arguments take.

## VII

### *Estoppel From Applying AB No. 2251*

 Appellants also contend it would be unjust to allow the state to enforce AB No. 2251. Appellants argue that during a meeting with the Department in October 1984, three members of the Legislature told appellants to challenge the legality of the EIR because the Department was not going to recognize their demands. Appellants contend the legislators therefore had a duty to prevent legislation which would foreclose appellants' opportunity to resolve the issue in the courts.

 While equitable estoppel may be applied against the government where justice requires it (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423]), four elements must be present for its application: (1) the state (or its agent) must have had knowledge of the facts, (2) the state must have intended or created a reasonable belief that its conduct would be acted upon, (3) appellants must have been ignorant of the true state of facts, and (4) appellants must have been injured as a result of their reliance. (*Id.*, at p. 489.) When the state is involved, not only must these elements be present, but the conduct of the state, through its agents, must be shown to be sufficient to support an equitable estoppel. (*Id.*, at p. 492.) Appellants have not demonstrated that the necessary elements of equitable estoppel are present or exist.

Although the Department and the various legislators knew appellants would challenge the adequacy of the EIR in the courts, nothing in the record leads us to believe appellants pursued this action solely on the basis of what happened at the October meeting with legislators.

Appellants acknowledge in their brief they were considering litigation before the meeting. Furthermore, it is not reasonable to conclude that a legislator's statement, that appellants should seek their legal remedies, is sufficient to support an estoppel. The legislator merely may have been informing appellants of available avenues for challenge.

The record does not indicate the legislative participants at the October meeting promised to prevent the passage of legislation affecting the Avenal prison. Even if they had made an explicit statement, it would not be reasonable for appellants to rely upon a belief that three legislators could stop any bill.

A few legislators do not speak for the entire Legislature and can make no guaranties. In addition, an estoppel will not be applied if it would nullify a strong rule of policy meant to benefit the public. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 493.) Both SB No. 253 and AB No. 2251 express a strong intent to alleviate prison overcrowding for the "peace, health, and safety" of the public. The facts and relevant policy considerations do not support an estoppel.

## VIII

### *The Issues Do Not Survive Passage of AB No. 2251.*

 Appellants contend that two issues survive the passage of AB No. 2251: (1) constitutional issues regarding the failure to give adequate notice and to conduct a hearing before selecting a prison site, and (2) the potential waste of public funds. The viability of the first issue rises and falls with the ability to challenge the EIR, which we have discussed. Therefore, the only issue that could remain from the original appeal is the contention that there is a potential waste of public funds.

 Under Code of Civil Procedure section 526a, taxpayers may sue state officials to enjoin them from illegally expending state funds. (*Los Altos Property Owners Assn.* v. *Hutcheon* (1977) 69 Cal.App.3d 22, 27 [137 Cal.Rptr. 775].) The term "waste" as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or discretion. (*City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 555 [79 Cal.Rptr. 168]; *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 160-161 [101 Cal.Rptr. 880, 496 P.2d 1248].) Appellants must cite specific facts and reasons supporting a belief that the state may be guilty of illegally spending public funds.

 From the very beginning, appellants have failed in this endeavor. Their allegations are general. They do not explain how the state is wasting public funds. Appellants repeat the same arguments they used to challenge the adequacy of the EIR—failure to consider alternative sites, potential cancer risks in using swamp coolers, and inadequate water supplies. A cause of action for waste of public funds cannot prevail if based upon innuendo and legal conclusions. To present such a case successfully, specific facts alleging a waste of public funds must be supported in the record. (*Hodgeman* v. *City of San Diego* (1942) 53 Cal.App.2d 610, 619 [128 Cal.Rptr. 412].) Otherwise, public officials performing their duties would be harassed constantly. (*City of Ceres* v. *City of Modesto, supra,* 274 Cal.App.2d at p. 555.) Without more facts than found in this record, courts could risk trespassing into the domain of legislative or executive discretion.

(*Harman* v. *City and County of San Francisco, supra,* 7 Cal.3d at pp. 160-161.)

 Because appellants failed to establish sufficient facts to support a case for waste of public funds, the court did not abuse its discretion in finding there was no such waste. This argument does not prevent the granting of the motion to dismiss the appeal.

## IX

### *AB No. 2251 Does Not Violate the Separation of Powers Doctrine.*

 In their attack upon the constitutionality of AB No. 2251, appellants also contend the Legislature, through AB No. 2251, violated the separation of powers doctrine, that the Legislature, by exempting the Avenal prison from the provisions of CEQA, actually reviewed or readjudicated a final court judgment. This is not so.

A law removing the power to litigate does not diminish the constitutional powers of the courts. (*Yolo Water etc. Co.* v. *Superior Court* (1919) 43 Cal.App. 332, 338 [185 P. 195].) The question is whether the Legislature is undertaking the role of a court through specific legislation. Through AB No. 2251 the Legislature eliminated the necessity of producing an EIR, and rendered the appeal on the adequacy of an environmental report moot, however, the Legislature did not readjudicate or review the judgment in an attempt to determine whether the EIR was adequate.

The instant case is distinguishable from *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935] where the California Supreme Court struck down an attempt by the Legislature to prevent the payment of attorneys' fees to a specific plaintiff. (*Id.,* at pp. 545-546.) While attorneys' fees generally may be paid out of an appropriation made to an agency, in the *Mandel* case, the Legislature argued that because a specific appropriation to the plaintiff was denied in a committee, attorneys' fees would not be available. In *Mandel,* the court stated that although the separation of powers doctrine might restrict a court from directly ordering the Legislature to enact an appropriation law, the doctrine did not preclude the judiciary from decreeing that funds appropriated by the Legislature should be paid without regard to an improper or invalid legislative restriction. (*Id.,* at p. 542.)

Here, the Legislature did not pass upon the validity of the appeal. It decided, for public policy reasons, that an EIR was not necessary for con-

struction of the Avenal prison. Because of the legislative action, the appeal is moot. The Legislature did not assume the role of the judicial branch; there is no violation of the separation of powers doctrine.

## X

### *There has Been No Denial of Procedural Due Process.*

 Appellants actually claim two separate violations of due process rights. Allegedly, the first occurred when the Department failed to give adequate notice during preparation of the EIR, then refused to give appellants an opportunity for a hearing. It is argued the second occurred with the passage of AB No. 2251. Appellants argue AB No. 2251 had the effect of "taking" away their procedural rights to challenge a state action that could change the use of their own land.

Appellants first seem to imply that the procedural due process challenge involving the EIR survives simply because it is framed as a constitutional issue. Appellants are in error. As discussed previously, any potential issue involving the adequacy or preparation of the EIR rises or falls with the necessity of preparing such a report. If a report is not required, there can be no failure under due process to provide proper notice or to grant a hearing concerning that report. "[T]he Legislature could have constitutionally omitted any requirement of notice to anyone." (*Lee* v. *Lost Hills Water Dist.*, *supra*, 78 Cal.App.3d 630, 634.) It becomes as simple as that. Because AB No. 2251 is valid, any issue involving the EIR is moot.

 As to the second argument, appellants contend that because they are neighbors to a proposed prison site, the construction of which could affect the use of their own property, they were entitled to notice and a hearing on the selection of a site. However, the constitutional notice and hearing requirements are triggered only when governmental action results in "significant" or "substantial" deprivations of property rights. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 616 [156 Cal.Rptr. 718, 596 P.2d 1134].) Landowners possess no vested right in the particular use of their property unless there is an uncompensated taking, or unless damage to their property results. (*Bakman* v. *Department of Transportation*, *supra*, 99 Cal.App.3d 665, 689-690.) In this case, the selection of a prison site is a purely legislative and political act. There is no constitutional requirement for a hearing in any legislative proceeding. (*California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500, 505 [131 Cal.Rptr. 744].)

No form of notice to appellants was required before the Legislature could authorize construction on a particular site, but, furthermore, appellants ac-

tually waived any right to make such a challenge. Appellants had actual knowledge of the existence of AB No. 2251 and its provisions exempting the Avenal prison from CEQA compliance and authorizing construction on a designated site. Appellants made numerous references to the bill throughout their earlier briefs, before the bill actually was passed. Furthermore, appellants' attorney actively participated in a hearing on September 5, 1985, before the Joint Legislative Prison Committee where the bill was discussed and where the committee considered approving funds for the purchase of Section 34 near Avenal. This hearing occurred at least two weeks before the bill was signed.

By our upholding the statute, appellants' due process claims regarding the EIR become moot. Appellants possessed no due process right as to notice or hearing in the selection of a site.

## XI

### *Attorneys' Fees.*

Finally, appellants seek an award of attorneys' fees pursuant to Code of Civil Procedure section 1021.5[10] as they originally requested in their complaint. The trial judge did not address the request for fees in his statement of decision. In his final order and judgment, the judge gave respondent, Department of Corrections, its costs as prevailing party in that court.

To obtain attorneys' fees under Code of Civil Procedure section 1021.5, one must be a successful party in an action resulting in the enforcement of an important right affecting the public interest. A significant benefit, whether pecuniary or nonpecuniary, must have been conferred on the general public or a large class of persons, and the necessity and financial burden of private enforcement make the award appropriate. Such fees should not, in the interest of justice, be paid out of any recovery. (Code Civ. Proc., § 1021.5; *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704].) A trial court determines the propriety of attorneys' fees under section 1021.5 after a hearing which focuses on the

---

[10]Section 1021.5 of the Code of Civil Procedure reads as follows: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

criteria established by the statute. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

 This case presents an unusual situation. The Legislature, by banning the use of ground water under Section 34 (AB No. 2251, § 5, amending § 9 of ch. 958, Stats. 1983), obviously recognized the merits of appellants' particular concern. Case law takes a pragmatic approach in defining "prevailing" or "successful" party within the meaning of section 1021.5. "The critical fact is the impact of the action," in achieving the desired result, not "the manner of its resolution." (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437]; *Wallace* v. *Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 843 [216 Cal.Rptr. 649].) The impact might include legislative changes, settlements, or amendments in policy.

In *Wallace* v. *Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d 836, the "desired result" was achieved by settlement and a change in agency policy (suspending regulations on retail milk prices). (*Id.,* at p. 842.) The case had not gone to trial when these changes occurred. In *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, attorneys' fees were awarded in a case that was settled when the plaintiffs agreed to dismiss upon substantial performance of defendants' promise to establish four transit systems, which was the result sought. (*Id.,* at p. 671.) The case did not reach the trial stage.

In *Coalition for Economic Survival* v. *Deukmejian* (1985) 171 Cal.App.3d 954 [217 Cal.Rptr. 621], a case which arose during a budget impasse, the plaintiffs filed suit seeking declaratory and injunctive relief and also filed a motion for a temporary restraining order. The action sought to prevent the state from ending all appropriations to AFDC programs. The trial court scheduled a hearing on a preliminary injunction and denied the temporary restraining order. Plaintiffs sought writ relief in the Supreme Court and the court issued an interim stay. One week later, the budget act was signed with an AFDC appropriation, the desired result. The Supreme Court dismissed the writ of mandate as moot. (*Id.,* at pp. 957-958.) Later, the suit for injunctive relief was dismissed and attorneys' fees were awarded. (*Id.,* at p. 958.)

In the above cases, litigation did not reach the trial stage; no findings were made on the actual merits of the case. The courts had not decided who the "successful" parties were. While at the trial court level the opposite was true, because we dismiss the case as moot, we do not have a prevailing party on the merits on appeal.

However, a factual issue exists as to whether appellants' efforts "resulted in the enforcement of an important right affecting the public interest . . . ." (Code Civ. Proc., § 1021.5.) If the persistence of appellants affected the Legislature's decision to prohibit the use of ground water under Section 34, then, based upon the above authorities, appellants are entitled to attorneys' fees under Code of Civil Procedure section 1021.5 attributable to those efforts.

The motion to dismiss the appeal as moot is granted. The matter is remanded to the trial court for a factual hearing and a determination of what attorneys' fees, if any, are allowable. The parties shall bear their own costs on appeal. (*Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 657, fn. 13 [150 Cal.Rptr. 242, 586 P.2d 556]; *Bell* v. *Board of Supervisors* (1976) 55 Cal.App.3d 629, 637 [127 Cal.Rptr. 757].) ▮ "[A]n appellate court has inherent power to make any award of costs which it deems proper when the interests of justice so require." (*Ibid.*)

Brown (G. A.), P. J., and Woolpert, J., concurred.

---

## APPENDIX

*1985 California Statutes*
*Chapter 931*

SEC. 2.5. Section 7013 is added to the Penal Code, to read:

7013. The Department of Corrections shall contract, or make a good-faith effort to contract, with the Department of Water Resources or the Bureau of Reclamation, or both, to secure a water supply for the prison at Avenal.

. . . . . . . . . . . . . . . . . . . . . .

SEC. 4. Section 21080.03 is added to the Public Resources Code, to read:

21080.03. This division shall not apply to any activity or approval necessary for or incidental to the location, development, construction, operation, or maintenance of the prison in the County of Kings, authorized by Section 9 of Chapter 958 of the Statutes of 1983, as amended, and of the prison in the County of Amador (Ione), authorized by Chapter 957 of the Statutes of 1983, as amended.

SEC. 5. Section 9 of Chapter 958 of the Statutes of 1983 is amended to read:

SEC. 9. Notwithstanding any other provision of law, the Department of Corrections is authorized to construct and establish a 3,000-bed, minimum security (Level 1 and Level 2), work-based prison on Section 34, Township 22 South, Range 17 East, Mount Diablo Base and Meridian in Kings County. The Department of Corrections is authorized to acquire or lease, as it deems appropriate, as many as two additional sections of land for the location of facilities and activities incidental to the prison. The department shall not pump or use groundwater from the basin and aquifer that underlies Section 34, from any aquifer in the Kettleman Hills basin, or any additional sections acquired or leased for that prison.

SEC. 8. For purposes of interpreting the Budget Act of 1985, enactment of this measure is considered resolution of the Sagaser v. Director of Corrections suit.

．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．

SEC. 10. If any provision of this act or the application thereof to any person or circumstances is held invalid, this invalidity shall not affect any other provisions or applications of the act which can be given effect without the invalid provisions or applications and, to this end, the provisions of this act are severable.

．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．

SEC. 11. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

The Legislature and the people of the State of California have determined that immediate expansion of the existing state adult prison system by the swiftest and most expeditious possible means is necessary to relieve that system from current severe overcrowding, problems incident thereto, including inmate violence, and to maintain the public safety and security. The system is presently operating at over 150 percent of capacity and prison population is still increasing. Development of the proposed California State Prison, Kings County-Avenal, the proposed California State Prison, Amador County (Ione), and the proposed California State Prison, Kings County-Corcoran, are major components in the immediate expansion which are essential. These prisons cannot be developed, constructed, or placed in operation in time to assist in relieving the overcrowding, in maintaining public safety and security, or to comply with court orders unless this act takes effect immediately.

*Chapter 933*

SEC. 1.5. Section 7004 (as added by Chapter 958 of the Statutes of 1983) of the Penal Code is amended and renumbered to read:

7007. (a) The Legislature hereby finds and declares that due to the lack of capacity for new inmates in the state prison system, the construction of new prison facilities is of utmost importance to the public safety and well-being. The Legislature further finds and declares that it is in the public's interest to ensure that prisons are planned, designed, and constructed in a manner which is consistent with the California Environmental Quality Act and which minimizes environmental and other impacts upon the communities in which they are located. It is the intent of the Legislature that expeditious planning, construction, and operation of new prisons shall be achieved by so-called "fast-tracking" of the environmental review process and by acceleration of any actions or proceedings brought pursuant to Division 13 (commencing with Section 21000) of the Public Resources Code, as provided in this section.

(b) Notwithstanding the guidelines adopted by the Secretary of the Resources Agency pursuant to Section 21083 of, and notwithstanding Section 21092 of, the Public Resources Code, there shall be no review period for a notice of preparation or response time for responsible agencies with respect to prison projects authorized by the Legislature. In lieu of such review and response periods, the department shall consult with responsible agencies during the preparation of a draft environmental impact report.

(c) Notwithstanding the guidelines adopted by the Secretary of the Resources Agency pursuant to Section 21083 of, and notwithstanding Section 21092, of the Public Resources Code, the review period for the draft environmental impact report shall not exceed 30 days unless a shorter review period is authorized by the Office of Planning and Research with respect to prison projects authorized by the Legislature.

(d) No action may be brought pursuant to Section 21167 of the Public Resources Code unless the alleged grounds for noncompliance with the provisions of Division 13 (commencing with Section 21000) of the Public Resources Code were presented to the public agency orally or in writing by any person.

(e) No person shall maintain an action or proceeding unless that person objected to the project orally or in writing.

(f) Subdivisions (d) and (e) do not apply where there was no public hearing or other opportunity for the members of the public to raise objections prior to the approval of the prison project or when the public agency failed to give the notice required by law.

(g) In any action or proceeding involving prisons authorized by the Legislature alleging noncompliance with Division 13 (commencing with Section 21000) of the Public Resources

Code, the petitioner shall request a hearing within 45 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any party interested therein.

(h) In any action brought pursuant to Section 21167 of the Public Resources Code involving prisons authorized by the Legislature, including the hearing of any such action on appeal from the decision of a lower court, all courts where such actions are or may hereafter be pending, shall give the actions preference over all other civil actions, in the matter of setting the same for hearing or trial, and in hearing the same, to the end that all such actions shall be quickly heard and determined.

(i) If an action brought pursuant to Section 21167 of the Public Resources Code involving prisons authorized by the Legislature is appealed, at the completion of the filing of briefs, the appellant shall notify the court of completion of the filing of briefs, whereupon the clerk of the reviewing court shall set the appeal for hearing on the first available calendar date.

(j) The filing of an action pursuant to Division 13 (commencing with Section 21000) of the Public Resources Code involving prisons authorized by the Legislature shall not stop activities such as the acquisition of a site for a prison, the planning and construction of a prison, provided that no temporary restraining order, preliminary injunction, permanent injunction, or any other court order mandating cessation of the activity exits [*sic*].

(k) The Legislature finds and declares that the enactment of this section is intended for the express purpose of expediting new prison construction, and that the procedures provided for in this section shall be utilized for this purpose.

(*l*) This section shall apply only to the expansion beds authorized in Section 4 of the act enacted in the 1985 portion of the 1985-86 Regular Session that amended and renumbered this section.

(m) This section shall remain in effect until January 1, 1988, unless a later enacted statute, which is enacted on or before January 1, 1988, deletes or extends that date.

. . . . . . . . . . . . . . . . . . . . . . .

SEC. 10. For payment of attorneys fees in the case of Sagaser v. Director of Corrections the sum of one hundred twenty-five thousand dollars ($125,000) is appropriated from the General Fund, notwithstanding Section 5 and Item 9810-001-001 of the Budget Act of 1985, upon settlement, provided that plaintiffs shall waive any further claim against the State for compensation associated with that case.

SEC. 11. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

The state's prison system is currently overcrowded and overpopulated to the point California faces a public safety crisis. The prison population has increased during the past 2½ years at an average rate of 100 inmates each week; during much of 1985, the increase has averaged an additional 170 inmates per week. Most of these inmates were sent to prison because they committed violent crimes. The courts have determined that various conditions which were indicents [*sic*] of overcrowding must be corrected. The Legislature and the people of California have determined that immediate expansion of the prison system by the swiftest possible means is necessary to relieve the system from current and anticipated overcrowding and to maintain the public safety and security. The provisions included in this bill are essential to permit the state to deal with this immediate and current crisis.