[Civ. No. 47649. First Dist., Div. Two. June 2, 1982.]

RONALD W. McFEE et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Andrew Thomas Sinclair for Plaintiffs and Appellants.

Donald L. Reidhaar, Milton H. Gordon, Romulus B. Portwood and Martha M. Chase for Defendant and Respondent.

OPINION

**ROUSE, Acting P. J.**—The Regents of the University of California (Regents) maintain and administer a tax-deferred annuity plan for university employees. This appeal presents the question of whether the Regents are required to comply with requests by employees enrolled in said plan that the employees' contributions be transferred to a commercial provider of tax-sheltered annuities instead of being maintained in a fund which is administered by the Regents. The answer to this question depends upon whether section 770.3 of the Insurance Code[1] applies in this situation and, if so, whether its application to the Regents unreasonably infringes upon powers vested in the Regents by the state Constitution.

Plaintiffs Ronald McFee, Thomas Campbell and James Day, employees of the Lawrence Livermore Laboratory of the University of California, brought this mandamus and declaratory relief action for the purpose of establishing that, under section 770.3, defendant Regents were required to comply with plaintiffs' instructions that their contributions to a tax-deferred annuity plan be placed with an independent agent, broker or company of plaintiffs' choice. Plaintiffs McFee and Campbell both alleged that, for a number of years, they had made regular contributions to the Regents' tax-deferred annuity plan and that neither of them had received any contributions from the Regents. It was further alleged that, on March 7, 1979, plaintiff McFee asked that his present contributions be transferred to a commercial provider of tax-sheltered annuities, and plaintiff Campbell asked that his accumulated contributions be transferred to such a commercial provider. Both plaintiffs were informed that the Regents' tax-deferred annuity plan did not afford them such an option. The third plaintiff, Day, alleged that he had never enrolled in the Regents' tax-deferred plan, but that he "would participate in [the Regents'] plan if it were possible to have his contributions used to purchase commercially available tax deferred annuities." Plaintiffs sought declaratory and injunctive relief based upon their claim that the Regents were required, under section 770.3, to comply with an employee's request that his contributions to the Regents' plan be placed with a commercial provider of annuities.

In their answer to plaintiffs' petition, the Regents admitted that the rules governing their plan required that employee contributions be

---

[1]Unless otherwise indicated, all statutory references are to the Insurance Code.

maintained in a fund administered by the Regents. However, the Regents affirmatively alleged that, by its own terms, section 770.3 was inapplicable to the Regents' plan and that, in any event, the statute's application to the Regents would impair the powers of organization and government granted to them by article IX, section 9, of the California Constitution.

The trial court rendered a judgment in the Regents' favor, denying plaintiffs' petition for a peremptory writ of mandate. ■ Plaintiffs appeal from the judgment, claiming, first, that section 770.3 is applicable to defendant Regents by its own terms and that the trial court erred in reaching the contrary conclusion.

Section 770.3 provides, in pertinent part, as follows: "No state department or agency shall negotiate any life or disability insurance or require the placing of such insurance through particular agents, brokers, or companies, except to the extent that the state has a direct financial interest in the subject of the insurance. The state has no financial interest in an annuity purchased for an employee where the premium therefor is paid from a deduction from or reduction in the employee's salary, and any annuity paid for through such a deduction or reduction shall not be deemed to have been provided by the state for its employees for purposes of this section, and the state shall not negotiate or require the placing of such annuity through particular agents, brokers, or companies. . . .

"*Notwithstanding anything in this section to the contrary, in any case in which a tax-sheltered annuity under an annuity plan which meets the requirements of Section 403(b) of the Internal Revenue Code of 1954*[2] *is to be placed or purchased for an employee, the employee shall have the right to designate the licensed agent, broker, or company through whom the employee's employer shall arrange for the placement or purchase of the tax-sheltered annuity. In any case in which the employee has designated such an agent, broker, or company, the employer shall comply with such designation.*

"As used in this section, 'state department or agency' shall include, but not be limited to, school districts and the University of California."

---

[2]United States Code Annotated, title 26, section 403(b) (Int. Rev. Code of 1954) deals with the taxability of certain types of employer-employee annuity plans.

"This section shall apply to all local governmental agencies, as well as state departments and agencies." (Emphasis supplied.)

Plaintiffs point out that section 770.3 expressly refers to section 403(b) of the Internal Revenue Code of 1954 and that the Internal Revenue Service has construed the word "purchased," as used therein, as applying to amounts contributed by an employer for an annuity contract pursuant to a salary reduction agreement with an employee. (Income Tax Reg. 1.403(b)-1, subd.(b)(3), 1 Federal Tax Regulations, West Publishing Co. (1978) pp. 1319-1320.) Plaintiffs conclude that section 770.3 and section 403(b) of the Internal Revenue Code of 1954 are *in pari materia*; that the term "purchased" should be given the same construction in both statutes and that it should therefore be held that the Regents "purchased" an annuity for their employees under section 770.3 when the Regents deposited the employees' contributions, under a salary reduction agreement, into the Regents' self-administered fund. Plaintiffs also assert that, when the Regents made such a deposit in their self-administered fund, they "placed" an annuity for their employees within the meaning of section 770.3.

The Regents disagree with plaintiffs' construction of section 770.3 and argue in favor of the trial court's interpretation that the statute was intended to apply only where an annuity is placed with or purchased from a third party agent, broker or company and not where the annuity is deposited in the employer's own self-administered fund. They assert that the intent of the entire statute, including the initial paragraph dealing with life and disability insurance, is to protect an employee of a state department or agency from being injuriously affected by the employer's dealings with third party private insurers. The Regents point out that the operative language of the statute, that the employee shall have the right "to designate the licensed agent, broker or company through whom the employee's employer shall arrange for the placement or purchase" of the annuity necessarily presupposes the use of a third party private insurer. The Regents also argue that if the Legislature had intended section 770.3 to apply to an employer's self-administered fund, as plaintiffs contend, the statute would have included such self-administered funds, as well as licensed agents, brokers or companies, among the choices which the employee is given the right to designate. Insofar as plaintiffs' *in pari materia* argument is concerned, the Regents deny that that doctrine is applicable merely because section 770.3 refers to section 403(b) of the Internal Revenue Code of 1954. The Regents further assert that the meaning of the terms "placed" or

"purchased" is of no real significance here, since section 770.3 was intended to apply only in a situation where an annuity has been placed with or purchased from a third party insurer.

We have concluded that the Regents, and the trial court, have properly construed section 770.3. The portion of that statute with which we are here concerned confers upon an employee the right to "designate the licensed agent, broker, or company" through whom the employer shall arrange for the placement or purchase of an annuity for the employee. This language clearly contemplates a third party situation and not a situation, such as that here present, where the employer administers its own fund. The Legislature's motives for furnishing an employee with protection in a situation where the employer is dealing with third party insurers are obvious, and plaintiffs, oddly enough, have explained them in a persuasive and convincing manner. For example, they point out that section 770.3 is contained in article 5.5 and that said article "is generally concerned with prohibiting those who stand in a superior position in certain financial transactions from imposing the use *of particular insurance agents, brokers or companies* on those in a weaker position." (Italics supplied.) Plaintiffs further state, "The evil to be prevented is that those in the better position *could obtain commissions or kick-backs or other undisclosed benefits from the particular insurance agents, brokers or companies.*" (Italics supplied.)

These considerations furnish ample justification for the Legislature to differentiate between the use of third party private insurers and the use of a self-administered fund established by a public employer. Section 770.3 has made such a distinction by granting an employee the right to designate the third party agent, broker or company with whom his employer must deal when purchasing or placing an annuity for that employee. The statute contains no reference to a public employer's self-administered fund, although the Legislature could easily have included such a provision. Hence, we are of the opinion that the Legislature did not intend the statute to apply in such a situation and that plaintiffs' suggested construction of the statute would require this court to usurp the legislative function and add to the statute language which the Legislature did not intend to include. We do not view this as the proper role of the courts.

Nor are we persuaded by plaintiffs' *in pari materia* argument. They cite *Rainey* v. *Michel* (1936) 6 Cal.2d 259, 277 [57 P.2d 932, 105

A.L.R. 148] for the proposition that, when the state Legislature enacts a statute which is based upon a federal statute, it must be presumed that the Legislature intended the state statute to be interpreted in the same manner as the federal statute. Here, however, we are confronted with no such situation, since, in no sense, can section 770.3 be viewed as based upon section 403(b) of the Internal Revenue Code of 1954. The two statutes are entirely dissimilar in purpose: one deals with the federal tax consequences of certain types of annuity plans established by employers for employees, and the other grants an employee enrolled in such a plan the right to require his employer to purchase the annuity from, or place it with, a particular private insurer. Where two statutes deal with such totally different subjects, there is no reason for according the same construction to terms appearing in both statutes. Furthermore, it is of no significance to our decision in this case that the Regents' act of depositing employee contributions under a tax-sheltered annuity program into the Regents' self-administered fund constituted the placing or purchasing of an annuity for federal tax purposes under section 403(b) of the Internal Revenue Code of 1954. The fact remains that the subject of section 770.3 is the placing of annuities or the purchase of same *from a licensed agent, broker or company.* It is obvious that no such situation exists where the employer deals only with its own self-administered fund.

Plaintiffs raise one additional argument which we also find unpersuasive. They point out that, prior to 1978, the third paragraph of section 770.3 stated that "As used in this section, 'state department or agency' shall include, but not be limited to, school districts," and that by a 1978 amendment (Stats. 1978, ch. 102, § 1, pp. 265-266), the Legislature added to the end of this sentence "and the University of California." They reason that the Legislature must have been aware of the University's annuity program when it enacted this amendment and that the Legislature "must have done one of the following: (1) passed the amendment naming the University to cover the contingency that, at some point in the future, the University *might* decide to purchase or place annuities with a licensed agent, broker or company; or (2) assumed that the statute by its own terms *was* applicable to the University's self-administered plan and enacted the amendment to expressly state that it was meant to apply to the Regents." Plaintiffs conclude that the second alternative is the only one which makes sense because the enactment of the 1978 amendment would otherwise constitute an idle act.

This argument is highly speculative and designedly self-serving. Also, it overlooks at least one additional alternative: that the Legislature had no detailed knowledge of the university's annuity program and merely wished to make sure that section 770.3 would apply to the university's annuity program *if* such program included the use of third party private insurers. In any event, even if we viewed ourselves as limited to the two alternatives posed by plaintiffs, we cannot agree that the second alternative compels acceptance. To the contrary, it is reasonable to assume that, if the Legislature was in fact aware that the university used nothing but its own self-administered fund in its annuity program and the Legislature wished section 770.3 to apply to such program, then it would have made mention of a self-administered fund when amending the statute, instead of continuing to refer only to the purchase from or placing of annuities with a licensed agent, broker or company. Since the Legislature did not so amend the statute, it is reasonable to assume that plaintiffs' second alternative was *not* the underlying rationale for the 1978 amendment.

Since we have concluded that the trial court must be upheld in its determination that, by its own terms, section 770.3 is inapplicable to defendant Regents, we need not deal with the Regents' additional argument that, if the statute were applicable to them, it would unreasonably infringe upon powers vested in the Regents by the state Constitution.

The judgment is affirmed.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied July 2, 1982, and appellants' petition for hearing by the Supreme Court was denied August 11, 1982. Newman, J., did not participate therein. Mosk, J., and Broussard J., were of the opinion that the petition should be granted.