EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE BONNIE GARCIA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. May a school district or its employees promote or give preferred status to a particular provider of Internal Revenue Code section 403(b) plans when offering such plans to the district's employees?
2. May a school district or its employees receive compensation for the promotion or sale of a particular 403(b) plan to public school employees? *Page 2 
 CONCLUSIONS
1. A school district and its employees may promote or give preferred status to a particular provider of 403(b) plans if the arrangement will aid the district in the administration of its benefit programs, does not unreasonably discriminate against any provider, and does not interfere with the rights of employees to purchase investment products from qualified providers of their own choice.
2. A school district and its employees may not receive compensation for the promotion or sale of a particular 403(b) plan to public school employees. However, a third-party administrator that is under contract to perform 403(b) plan administrative services for a school district and its employees may receive such compensation, so long as the third-party administrator's relationship with a plan vendor or provider, and the nature of the compensation received, are fully disclosed to the school district and to the employees participating in the 403(b) plan.[1]
 ANALYSIS
The employees of a school district may invest in tax-deferred investment plans authorized by section 403(b) of the Internal Revenue Code[2] in the form of either an annuity contract or a custodial account for regulated investment company stock.[3] Various insurance companies and mutual fund companies offer 403(b) plans.[4]
 1. Preferred Status *Page 3 
The first question for us concerns whether a school district may give preferred status to a particular provider of 403(b) plans when offering such plans to their employees. We conclude that they may, if the arrangement will aid the district in the administration of its benefit programs, does not unreasonably discriminate against any 403(b) provider, and does not interfere with the rights of employees to purchase investment products from qualified providers of their own choice.
Preliminarily, we note that school districts have broad authority to conduct their affairs in any manner that they see fit, as long as their acts are not in conflict with, inconsistent with, or preempted by state law.[5] Thus we start from the presumption that a school district may grant preferred status to a 403(b) plan provider, and do all the other things inquired about here, unless those acts are at odds with existing state law.
The Education Code sets forth the general rights and responsibilities of school districts and their employees in administering school matters in general, [6] as well as the rights and responsibilities of the State Teachers' Retirement System (CalSTRS) in administering the State Teachers' Retirement Law.[7] With respect to 403(b) plans in particular, the Education Code provides that a school district, as an employer, may offer 403(b) plans to, and collect the costs of regulatory compliance and administrative services from, its participating employees.[8] A school district may use its own employees to administer its 403(b) program, or it may contract with CalSTRS or a private third-party administrator ("TPA") to act as its agent in administering the program.[9]
The Education Code expressly provides that, in selecting 403(b) plan providers and administrators, a district may place "nonarbitrary requirements" on providers if those requirements aid the district in the "administration of its benefit programs" and "do not unreasonably discriminate against any provider."[10] Thus it is plain that a school district is not required to promote or work with all eligible 403(b) plans equally. In being selective about which providers to work with, however, a district must be careful not to interfere with *Page 4 
the rights of its employees to choose different licensed agents, brokers, or companies with which to invest their school-administered 403(b) funds.[11]
Employees' right to purchase investment products from the vendors of their own choice is the backbone of Insurance Code section 770.3. This statute is found in article 5.5 of the Insurance Code, which is "generally concerned with prohibiting those who stand in a superior position in certain financial transactions from imposing the use ofparticular insurance agents, brokers or companies on those in a weaker position."[12]
The Legislature took steps to reinforce employees' right to exercise free choice in their 403(b) purchases in 2002, when it passed Assembly Bill 2506. Among other things, the bill required the CalSTRS Board to establish a vendor registration process through which information about 403(b) investment products is made available for evaluation by public education employees, [13] and to maintain an internet site providing impartial information allowing employees to compare registered vendors and their various investment products.[14]
Access to information about 403(b) products is not, however, the only hurdle that school employees have had to overcome in saving for retirement. Until recently, school employers were not required to supervise the handling of employees' 403(b) assets — indeed most school employers, lacking expertise in the subject matter, did little more than process payroll deductions.[15] Even at that, many districts contract with third-party administrators to process those payroll deductions. In a number of cases, financial service companies contract to provide TPA services at low or no cost in exchange for preferred treatment of their own 403(b) investment products.
Many independent financial services providers have told us that they have concerns about the consequences of school districts giving preferred status to particular 403(b) providers. Of course, a preferred-provider arrangement places independent providers at a relative disadvantage in the competition for 403(b)-related business. In addition, many *Page 5 
independent providers have told us that the preferred-provider system has resulted in disadvantages for school employees as well, including: a lack of adequate financial advice and services; an increase in paperwork and bureaucratic obstacles; a lack of accountability for individual transactions; and unfair steering of employees to financial products associated with the preferred provider or its affiliates. There have also been reports of outright abuses in some instances, including embezzlement of retirement savings.[16]
In 2006, the Legislature revisited the 403(b) issue and addressed a number of these kinds of problems when it passed Assembly Bill 2462. The bill imposes stringent new requirements upon school districts that elect to contract for TPA services, and also authorizes districts to contract with CalSTRS for TPA services. Now school employers contracting with TPAs must determine that hiring the TPA is in the best interests of the participants, their beneficiaries, and the employer; require the TPA to provide proof of liability insurance and a liability bond sufficient to cover the assets of the participants; if the TPA is affiliated with a provider of investment products, require evidence that participant personal data is not accessible to the provider of investment products; require the TPA to disclose any contractual relationship, fees, commissions, cost offsets, reimbursements, or marketing and promotional items it receives from other 403(b) investment providers; and require the TPA to provide evidence of a safe chain of custody of assets process to fulfill its fiduciary responsibility and to ensure timely placement of participant investments.[17]
The overhaul of statutes governing annuity plans has significantly altered the context within which school districts must discharge their administrative responsibilities. But the Legislature has largely left intact the authority of district officials to craft their own approaches to plan administration so long as principles of reasonableness and nondiscrimination are observed. School districts continue to enjoy the flexibility given to them by the Constitution and the Legislature to create unique solutions to the issues confronting them in 403(b) plan administration.
While it is entirely conceivable that granting preferential consideration to some 403(b) providers may still result in some hardships, we find nothing in the applicable laws to suggest that such an arrangement is not allowed. The law does not require that all annuity providers be treated the same; instead, it expressly allows employers to establish nonarbitrary requirements upon providers that aid in the administration of benefit programs and that do not unreasonably discriminate against any provider or interfere with the rights of employees. Whether in practice a particular administrative methodology actually imposes arbitrary *Page 6 
requirements or unreasonably discriminates against a particular provider is a question of fact outside the scope of this opinion.
We conclude, therefore, that a school district may promote or give preferred status to a particular provider of 403(b) plans, if the arrangement will aid the district in the administration of its benefit programs, does not unreasonably discriminate against any provider, and does not interfere with the rights of employees to select and purchase investment products from qualified vendors and providers of their own choice.
2. Compensation for Promotion
Before Assembly Bill 2462 was passed, school districts were not allowed to charge employees for the administrative costs and other expenses associated with processing 403(b) plans.[18] In recognition of sharply increasing administrative burdens on school districts that offer 403(b) plans (including those arising from pending new federal regulations[19]), Assembly Bill 2462 gave school districts the authority to recover the costs associated with 403(b) transactions.[20]
The second question for us is whether a school district may receive compensation, distinct from administrative costs, specifically for promoting or selling 403(b) plans to school employees. The answer, generally speaking, is No. Education Code section 25112 says that *Page 7 
"personnel . . . acting on behalf of a local school district . . . may not receive consideration from a vendor in exchange for the promotion of a particular vendor or vendor's products."[21] However, it is worthwhile to explore some of the nuances of the issues especially in light of the recent enactment allowing schools to recover their 403(b) administrative costs.
First, we think there is a clear distinction between a school employee's regular salary or wages on the one hand and, on the other, any fees or commissions that are based on promoting or selling particular 403(b) products. Whenever a school district maintains any responsibility for administering 403(b) plans, it will have some employees whose day-to-day duties include, and whose compensation therefore depends to some extent on, tasks such as facilitating 403(b) transactions or recouping costs associated with 403(b) administration. Nothing in the statute prohibits school employees from being paid by the district to work on 403(b) administration. The telling distinction within the statute is whether a school employee takes compensationfrom a vendor for promoting or selling the vendor's 403(b) products. The statute prohibits school employees from acting as sales agents for 403(b) vendors in return for commissions.
Different considerations arise when a TPA acts on behalf of a school district to administer 403(b) plans. The 2006 legislation specifically contemplates that the TPA itself may be a vendor or provider, or affiliated with a vendor or provider of 403(b) products.[22] Certainly where a provider itself is the TPA, the legislation does not preclude it from receiving its usual fees and commissions in connection with the sales of investment products to participating employees. Instead, the new legislation requires TPAs to disclose any commissions or promotional arrangements that the TPA receives from a plan provider, and to disclose any relationships it has with providers.[23] *Page 8 
We therefore conclude that a school district and its employees may not receive compensation for the promotion or sale of a particular 403(b) plan to public school employees. However, a third-party administrator that is under contract to perform 403(b) plan administrative services for a school district and its employees may receive such compensation, so long as the third-party administrator's relationship with a plan vendor or provider, and the nature of the compensation received, are fully disclosed to the school district and to the employees participating in the 403(b) plan.
[1] Our analysis and conclusions are equally applicable to county offices of education and consortiums of school districts, which we were also asked to consider. A county office of education may act in place of a school district in specified circumstances. See, e.g.,89 Ops.Cal.Atty.Gen. 182 (2006) (special education programs provided by county offices of education and school districts). School districts may join together under the Joint Exercise of Powers Act to perform any power common to them. Govt. Code § 6502.
[2] 26 U.S.C. § 403.
[3] Educ. Code §§ 24950, 24953, 44041, 44041.5.
[4] See generally 57 Ops.Cal.Atty.Gen. 166 (1974).
[5] Cal. Const. art. IX, § 14; Educ. Code §§ 35160, 35160.1.
[6] Educ. Code §§ 44030-44049.
[7] Id. at §§ 22000-25115.
[8] Id. at §§ 24592, 24593, 44041(b).
[9] Id. at §§ 24593(c), 44041.5(b), (g).
[10] Id. at § 24593(f)(2); see id. at 44041.5(f)(2) (using identical language).
[11] Id. at §§ 24953(f) (citing Ins. Code § 770.3), 44041.5(f)(1) (same).
[12] McKee v. Regents of the University of California,133 Cal. App. 3d 616, 621 (1982) (emphasis in original).
[13] Educ. Code § 25100.
[14] Id. at § 25104. The website address ishttp://www.403bcompare.com.
[15] See Assembly Floor Analysis of AB 2462 (2005-2006 Reg. Sess.) as amended, Aug. 22, 2006, p. 4.
[16] Id.
[17] Educ. Code § 44041.5.
[18] See 57 Ops.Cal.Atty.Gen 166, 174 (1974) ("[S]chool districts must themselves bear the administrative costs of providing tax-sheltered annuities to their employees."). See also 87 Ops.Cal.Atty.Gen. 14, 18
(2004) (amendment to statute did not change rule).
[19] On January 1, 2008, the Internal Revenue Service implemented regulations that prescribe added record keeping requirements and fiduciary responsibilities on educational employers that provide their employees with 403(b) tax-deferred compensation plans. See26 C.F.R. Pts. 1 and 31; www.calstrs.com/Employers/IRS_Regs.aspx.
[20] Education Code section 44041(b) now permits a school employer to deduct 403(b) contributions from an employee's paycheck "with or without charge," and further provides that the employer "shall determine the cost of performing the requested deduction and may collect that cost from the organization, entity, or employee requesting or authorizing the deduction. For purposes of this subdivision, the governing board of a school district is entitled to include in the amounts reducing the order the costs of any compliance or administrative services that are required to perform the requested deduction in compliance with federal or state law, and may collect these costs from the participating employee, the employee's participant account, or the organization or entity authorizing the deduction."
[21] Education Code section 25112 states: "Personnel, including elected school officials, acting on behalf of a local school district, community college district, or county office of education may not receive consideration from a vendor in exchange for the promotion of a particular vendor or vendor's products."
[22] See Educ. Code §§ 44041.5(c)(1)(C), (d).
[23] Education Code section 44041.5(d) states: "A third-party administrator shall disclose to any employer seeking his or her services any fees, commissions, cost offsets, reimbursements, or marketing or promotional items received by the administrator, a related entity, or a representative or agent of the administrator or related entity from any plan provider selected as a vendor of a annuity contract, custodial account, or deferred compensation plan by the employer. A third-party administrator that is affiliated with or has a contractual relationship with a provider of annuity contracts, custodial accounts, or deferred compensation plans shall disclose the existence of the relationship to each employer and each individual participant in the annuity contract, custodial account or deferred compensation plan." *Page 1